ELIPHALET S. NUTTER *vs.* HENRY W. KING.

Worcester.    October 3, 1890. — October 24, 1890.

Present: FIELD, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Assignment for the Benefit of Creditors — Assent — Trustee Process.*

Under an assignment for the benefit of such of the assignor's creditors as should "verbally or in writing assent" thereto, language or conduct which reasonably interpreted affirmatively shows assent is sufficient to give validity to the instrument.

The assignee, under an assignment for the benefit of such of the assignor's creditors as should "verbally or in writing assent" thereto, was summoned as trustee of the assignor, and answered that creditors whose names and claims aggregating more than the property in his hands were given assented to the assignment before service upon him. At the trial of an action against him for falsely answering, individual creditors named by him testified that they had not assented; and the jury was instructed that "the answer was in effect disjunctive, and that the legal effect is not, and was not in the mind of" the assignee, that he treated such creditors as one. *Held*, that the rule that a trustee will not be held for wilful false answering upon the uncorroborated testimony of a single witness applied; and that no ground of exception was shown.

TORT, for false answers alleged to have been made by the defendant in answer to a trustee process.

At the trial in the Superior Court, before *Dewey*, J., it appeared that Carrie A. Ingalls, on May 29, 1888, made an assignment to the defendant for the benefit of such of her creditors as should "verbally or in writing assent to this assignment to the amount of their claim." On May 31, 1888, the plaintiff brought an action against Ingalls, and summoned the defendant as trustee. In his sworn answer, the defendant disclosed that property of Ingalls had come into his hands as such assignee from which he had realized about $2,200, and also, among others, made the following statement: "Creditors amounting in value to more than the proceeds of the property in my hands assented to the assignment before the service of the plaintiff's writ upon me, they were as follows." Here followed a list of creditors, with the claims of each, aggregating $2,717.89, including H. M. Bradstreet, H. A. Fobes, and at the end Beiermeister & Spicer. "Regarding the last creditor I wish to say that on the morning of the 31st of May I obtained their assent to the assignment,

and they have never expressed their dissent to me. Yet either later in the day, or during the next day, on a writ dated May 31, 1888, they attached the livery stable property mentioned in my answer to the interrogatories first propounded. On this writ, upon their petition, the property so attached was sold by the attaching officer in conformity to law, and afterwards, some time in February, 1889, I think, all matters between Beiermeister & Spicer and myself as assignee were adjusted and settled." The plaintiff duly recovered judgment against Ingalls for $528.63, which judgment remained unpaid; and the defendant as trustee was duly discharged on his answers.

The plaintiff introduced the evidence of Beiermeister, Spicer, Fobes, and Bradstreet, which was contradicted, tending to show that they did not accept the provisions of the assignment.

The plaintiff requested the judge to rule that the assent of creditors must be expressly made, and that such assent could not be implied. The judge declined so to rule, and instructed the jury on this point, in part, as follows: " The document provided that the assent need not be a written assent. . . . It is only necessary that creditors should give such assent to its provisions as will recognize and affirm the acceptance and possession of the property by the assignee, as made and held for their benefit and in their behalf, in accordance with the terms of the assignment. The acquiescence is something more than negative. . . . It is acquiescence and consent, briefly call it what you will, the state of mind on the part of the creditor, who, knowing the facts, gave Mr. King to understand that he acquiesced in Mr. King's keeping the property under the trust, and disposing of it accordingly. It is not necessary that the word assent should be used. It is not necessary that any legal formula should be employed. If Mr. King went in and informed these creditors of the facts, and made a fair statement to them of the facts, exhibiting to them this deed of trust, if they wanted to see it, and they so conducted themselves towards him in what they said and did that he, as a reasonable man, understood them to assent, and acted in good faith upon that understanding, then for the purpose of this case they must be taken to have assented."

The plaintiff also contended that the answer of the said King as trustee—" that creditors amounting in value to more than the

property in his hands assented to the assignment before the service of the plaintiff's writ upon him, they were as follows " — was one fact, and that the testimony of creditors so named by said King, that they did not so assent, is to one fact. The judge declined so to instruct the jury, but ruled as follows: " I think that the answer is in effect disjunctive, and that the legal effect is not, and was not in the mind of Mr. King, and is not by any fair legal construction, to be taken that he puts those several creditors all together, and in his mind and in the language he uses in that answer treats them as one. So I say the answer will not in my judgment warrant that construction. And when Mr. King in his answer as trustee says that the several creditors, naming them, assented, he did in effect make that distinct proposition of facts with reference to each creditor. And therefore it seems to me that, so far as that matter is concerned, the testimony of Mr. Bradstreet that he did not assent, and the testimony of Mr. Fobes that he did not assent, is not to be taken as the testimony of two witnesses to the same proposition. They are legally distinct statements."

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*T. G. Kent,* for the plaintiff.

*W. W. Rice,* for the defendant.

KNOWLTON, J. The assignment to the defendant was in terms for the benefit of such of the creditors of the assignor as should " verbally or in writing assent " to it. It was not necessary that their verbal assent should be express. Any language and conduct which, reasonably interpreted, affirmatively showed assent, was enough to answer the requirement of the instrument and to give it validity. The ruling of the court upon this part of the case was correct. *May* v. *Wannemacher,* 111 Mass. 202. *Pierce* v. *O'Brien,* 129 Mass. 314. *Jones* v. *Tilton,* 139 Mass. 418.

The court declined to instruct the jury, as requested by the plaintiff, that the statement in the answer of the defendant " as trustee — ' that creditors amounting in value to more than the property in his hands assented to the assignment before the service of the plaintiff's writ upon him, they were as follows' — was one fact, and that the testimony of creditors so named by said

King that they did not so assent, is to one fact," and the plaintiff excepted. In considering this exception, we must look to the principle of law in reference to which the request was made. It has been decided that, in a case of this kind, a defendant cannot be held for wilful false swearing on the unsupported testimony of a single witness to the fact in controversy. *Laughran* v. *Kelly*, 8 Cush. 199. The plaintiff in this case had but one witness to testify to any one specific fact. He therefore sought to bring himself within the law by treating the general statement of the defendant as a single fact, and calling a witness to contradict him on each of two elements which entered into the fact. If this statement were held to be a single fact, it would follow that no witness contradicted the defendant upon it, for neither of the witnesses could contradict the statement as a whole, nor testify to anything which, taken by itself alone, had any tendency to contradict it. But in reference to the purpose for which the ruling was asked, the statement is not to be considered as merely one fact. It is a statement of a result, or a fact, which by its very terms included many facts. An effectual contradiction of the defendant in regard to it would include a contradiction of all the elements of fact which are necessarily involved in it. It was as if the defendant had given the value of the property assigned, and the names of the creditors who assented, with the amounts of their respective debts, and had stated the aggregate amount which was produced by adding the debts together, without other statement of the result. This clearly could not be treated as one fact. Moreover, the whole answer to this part of the question is to be considered together, and immediately following the words quoted appear in it the names of the assenting creditors, with the amount of the debt of each, and a particular statement in regard to the assent of Beiermeister and Spicer. The request for instructions was rightly refused.

The defendant was not injured by the expression "in the mind of Mr. King," which appears in the charge. What the judge said upon this part of the case was given to the jury as the true interpretation of an answer in writing, and there was no improper expression of opinion.

*Exceptions overruled.*