AMERICAN BLOWER COMPANY, Appellee, v. LION BONDING & SURETY COMPANY, Appellant.

ASSIGNMENTS FOR BENEFIT OF CREDITORS: Construction 1 and Operation—Non-Statutory Assignments—Failure to Meet Conditions—Effect. A provision in the nature of an *option* on the part of a debtor to wholly recall a non-statutory assignment for the benefit of creditors, provided a certain proportion of the creditors did not assent to the conditions of the assignment (i. e., that the *pro rata* amount realized should be in full of each debt) is not automatically exercised by the failure to secure the consent of the required proportion of creditors. *To effect such result, the debtor must affirmatively exercise his option.*

ASSIGNMENTS FOR BENEFIT OF CREDITORS: Non-Statutory 2 Assignments—Acceptance by Creditors. A creditor who was notified of a non-statutory assignment for the benefit of creditors, and, though declining to sign the blank acceptance sent him, expressed, in writing, his hearty co-operation with the plan to wind

up the affairs of the debtor, and filed his claim with the trustee, and, without objection, permitted the trustee to administer the trust, and accepted his proportionate amount of the proceeds ''in full of account,'' *may not say that he did not consent to the assignment.*

**COMPOSITION WITH CREDITORS:**    Operation and Effect—Receipting Claim in Full—Unknown Existence of Bond—Effect.    A creditor who consents to a good-faith non-statutory assignment for the benefit of creditors, and accepts his proportionate amount of the proceeds ''in full of account,'' in accordance with the express conditions of the assignment, *thereby extinguishes his debt,* even though in so doing he did not know that the debtor had given a bond conditioned for the payment of his claim, and did not know that other creditors had, in addition to sharing in the proceeds of the assignment, received the balance of their claims· in full from the bonding company, such company being an entire stranger to the assignment proceedings and being guilty of no fraud.

**FRAUD:**    Acts Not Constituting Fraud—Withholding Knowledge of Facts.    Fraud may not be predicated on the withholding of knowledge which is equally as open to the one complaining of the withholding as to the one complained of.

*Appeal from Polk District Court.*—WM. S. AYRES, Judge.

WEDNESDAY, JANUARY 17, 1917.

THE opinion sufficiently states the case.—*Reversed and remanded.*

*Dunshee, Haines & Brody,* for appellant.

*Miller & Wallingford* and *Oliver H. Miller,* for appellee.

WEAVER, J.—Pray & Comerford entered into a contract with· the school district of the city of Des Moines to do a prescribed job of plumbing and heating in a certain school building.   To secure the proper performance of said contract, the defendant surety company became surety upon the contractor's bond in the penal sum of $3,000.   The recitation of the bond was that the obligors were ''held and firmly bound unto the Independent District of Des Moines and to

all persons who may be injured by any breach of this bond.''
Among its specified obligations was one to the effect that
Pray & Comerford would pay ''all claims for labor and ma-
terial furnished for or used in or about said building.'' The
plaintiff herein alleges that it sold to Pray & Comerford cer-
tain materials used in and about the building in the work
covered by said contract; that the amount of such sales aggre-
gated $915; and that there is an unpaid remainder of $171.60
due on said account, for which it demands judgment on the
bond. The defendant admits the contract between the con-
tractors and the school district, and the giving of the bond
as alleged by plaintiff. Defendant also admits the sale of
the materials by plaintiff to Pray & Comerford, but denies
that there is anything due or unpaid to plaintiffs on such
account.

As an affirmative defense, it is alleged that Pray & Com-
erford, becoming insolvent and being unable to complete
their contract with the school district, assigned all their assets
to L. C. Kurtz and Fred W. Swanson, to effectuate a com-
position settlement or agreement with their creditors, the
purpose being to obtain the consent of their creditors to
accept in full and complete satisfaction of their several claims
their proportionate share of the proceeds of such assign-
ment. It is further alleged that the creditors of Pray &
Comerford, including the plaintiff, did consent to such com-
position, filed their claims with the assignees, and received
and accepted their dividend or share in accordance with the
terms of said assignment, thereby discharging their claim in
full and releasing the defendant from the obligation of the
bond.

Replying, the plaintiff denies that it signed the compo-
sition agreement, but admits that it filed its claim with the
assignees and received the dividend made thereon; but said
it did so because it had been assured by the assignees that
the arrangement was the best which could be made, and be-

cause it did not then know that defendant was surety on the bond given by Pray & Comerford. It further alleges that, after the assets of the insolvent firm had been distributed among the creditors, certain creditors of the same class with plaintiff received from defendant payment in full of their respective claims. Finally, it is alleged that, had plaintiff known the fact that the bond had been executed for the benefit of all persons furnishing labor or materials to Pray & Comerford for said work, it would not have accepted said dividend in full payment of its claim.

The issues joined were submitted to the court, without a jury, upon an agreed statement of facts reading as follows:

"Comes now the above named parties, and do hereby waive a jury trial and do agree that said cause may be tried to the court for final order upon the pleadings and court files herein, and upon the following agreed statement of facts, to wit:

"I.    It is agreed that, on June 21, 1913, the copartnership of Pray & Comerford of Des Moines, Iowa, entered into a written contract with the Independent School District of Des Moines, in which said firm agreed to complete the heating and plumbing to be installed in what is known as the Park Avenue School in Des Moines, Iowa, in accordance with certain agreed plans and specifications; and that said firm of Pray & Comerford did, on June 28, 1913, execute and deliver to the said Independent School District its bond for $3,000, upon which the defendant, Lion Bonding & Surety Company, was surety, and in which bond it was recited that the same was for the benefit of 'all persons who may be injured by any breach of any of the conditions' thereof, and a copy of which bond, marked Exhibit I, is hereto attached as a part of this agreed statement of facts.

"2.    That, on June 20, 1913, the American Blower Company, plaintiff herein, entered into a subcontract with the

firm of Pray & Comerford to furnish certain materials and perform certain work in connection with the plumbing and heating of said Park Avenue School building for the agreed and contract price of $915. That plaintiff fully complied with the terms of its said contract and its work was approved and accepted both by Pray & Comerford and the said Independent School District. That the plaintiff received from said Pray & Comerford on December 13, 1913, $305, and on December 23, 1914, the further sum of $350, making a total amount of credits received of $655, and leaving due and owing on said contract on said date last named the sum of $260.

"3. That thereafter, and in April, 1914, Pray & Comerford became insolvent, and did during said month assign in writing all of its assets to L. C. Kurtz and Fred W. Swanson, as trustees, a copy of said assignment being attached to the answer of the defendant, filed herein as Exhibit 'A,' and which exhibit by reference is made a part of this stipulation.

"4. That said L. C. Kurtz and said Fred W. Swanson, as trustees, took immediate possession of all of the known assets of said Pray & Comerford and held them for safe keeping, and immediately, to wit, on the 5th day of May, 1914, sent a written notice of said assignment or trust deed to each known creditor, including the plaintiff, which written notice solicited each creditor to sign an agreement consenting to said assignment, and agreeing to accept any dividend that might result therefrom in full satisfaction of his claim. A copy of said written notice of said assignment is hereto attached, marked Exhibit 'B,' and made a part hereof.

"5. That many of the creditors signed such an acceptance, but the plaintiff did not sign the written form of an acceptance which had been mailed to it, but wrote to said trustees in reply to their solicitation a letter, a copy of which is hereto attached, marked Exhibit 'C,' and made a part hereof, and did file its said claim of $260 with said trustees,

and did thereafter and on or about January 2nd, 1915, accept and cash a dividend check of 34 per cent, amounting to $88.40, from said trustees, which check had written upon the face thereof the words 'in full account of Pray & Comerford.'

"6.   That after allowing such credit there still remains unpaid on the account of plaintiff against Pray & Comerford the sum of $171.60, with 6% interest thereon from January 1, 1914.   That Pray & Comerford at the time of said assignment was engaged in a general plumbing and heating business, and was indebted to a large number of creditors for various materials furnished said firm, but that only a small per cent of such creditors furnished any materials or performed any labor under the heating and plumbing contract for the said Park Avenue School.   That among the creditors who signed the acceptance of said assignment, and who agreed to release Pray & Comerford from any further obligations after the 34% dividend was declared, were the Johnson Service Company of Chicago and L. H. Kurtz Company of Des Moines, which two creditors last named did furnish materials and perform labor upon the said Park Avenue School as subcontractors under Pray & Comerford, and that, in addition to each of them receiving their said 34%, they did also receive the balance in full of their said claims from the Lion Bonding & Surety Company, which payments in full were not known to the plaintiff at the time it accepted its said dividend check from the trustees.   That said settlement was made in full with the said two creditors last above named by the defendant in the cases instituted in this court, entitled L. H. Kurtz Company, plaintiff, vs. Lion Bonding & Surety Company, defendant, law No. 24202, and in the case of Johnson Service Company, plaintiff, vs. Lion Bonding & Surety Company, defendant, law No. 24201.

"7.   It is further stipulated that the plaintiff, American Blower Company, did not know, at the time it cashed the said dividend check of the trustees of $88.48, that the said

firm of Pray & Comerford had filed with the Independent School District of Des Moines, a $3,000 bond, upon which the defendant, Lion Bonding & Surety Company, was surety for a faithful completion of the stipulated work in the said Park Avenue School building, and that the acceptance of the said 34% dividend check by plaintiff was induced by the advice contained in the letter written by the trustees to plaintiff under date of May 5, 1914, in which no mention whatsoever was made of the existence of the bond upon which defendant was surety, and in which it was represented that it would not be possible for any greater payment to be received by plaintiff on its account other than what might be realized as its pro rata share of the assets of Pray & Comerford, which pro rata share amounted, as above stated, to 34% of the actual amount due plaintiff.

"8. That defendant did not solicit plaintiff to accept the terms of said assignment, and did not consent that plaintiff might release Pray & Comerford from further liability, after the payment of said dividend; but it is conceded that plaintiff would not have accepted said dividend check had it at the time been advised by said trustees, or had it then known of defendant being surety on said $3,000 bond. It is also conceded that defendant is liable herein to plaintiff on its said bond in the sum of $171.60, with interest from January 1, 1914, if it be determined herein that said claim has in fact not already been compromised and settled.

"9. It is further agreed that, in addition to the pleadings filed herein, the documentary evidence on the question of whether or not defendant's liability on said bond has been discharged consists of the following: First. The trust deed, or deed of assignment. Second. Notice sent by the trustees, May 5, 1914, to each creditor, including plaintiff, Exhibit 'B' attached hereto. Third. Letter of plaintiff to said trustees under date of May 8, 1914, Exhibit 'C' hereto attached. Fourth. Letter of December 28, 1914, of trustees transmitting dividend check, Exhibit 'D' hereto attached. Fifth.

Check used by the trustees in transmitting the dividend, and all indorsements thereon, Exhibit 'E,' hereto attached.

"AMERICAN BLOWER COMPANY,

"LION BONDING & SURETY CO."

Without prolonging this statement by quotation in full of the exhibits referred to, it may. be said that the notice given to plaintiff by the assignees recites the insolvent condition of Pray & Comerford, with an estimate of their liabilities and assets, and states that, in the opinion of the creditors most largely interested, the proposed method of liquidation would be best for all.   Accompanying the notice was a blank prepared for the signatures of accepting creditors, which plaintiff was requested to sign and return.   In closing, the assignees said:

"Let us impress upon you that Pray & Comerford insist upon a provision being inserted in the trust deed that all creditors must accept the proposition within 15 days from the date thereof; otherwise they were at liberty to file a voluntary petition in bankruptcy, which we and you know means much expense and waste and much less percentage on the dollar."

The plaintiff returned the blank acceptance unsigned, with a letter saying:

"The Globe Machy. & Supply Co.,

"Des Moines, Iowa.

"Gentlemen:                                Re Pray & Comerford.

Attention—Mr. F. W. Swanson.

"We are in receipt of your letter of the 5th and are certainly surprised to note conditions surrounding the above company's standing.   Of course, their indebtedness to us is not as great as it is to you and some of the others, but nevertheless we want to do everything we can to get the money coming to us.   We, therefore, desire to advise you that the proposed method of liquidation as outlined in yours of May

5th is perfectly satisfactory to us, and you can count on our assistance. We enclose herewith our latest statement covering the present status of the account. You will note that there is a balance of $260 to be paid. You will note we are not signing the 'Acceptance and Release,' because we do not feel that we want to bind ourselves in such a way that, in case your plan does not go through, we cannot take steps on our own responsibility.

"Yours very truly,

"AMERICAN BLOWER COMPANY."

In closing out the insolvent estate, the assignees reported to the plaintiff that the dividend amounted to 34 per cent upon the claims filed, making the amount due plaintiff thereon, $88.40. Enclosed therewith was a blank check to plaintiff for that sum, and having upon the face thereof the words. "In full of the account of Pray & Comerford." The check was received and cashed by plaintiff, and they now make the same an item of credit upon the account in suit.

Upon the record thus made, the trial court found for the plaintiff for the amount of its claim, and the defendant appeals.

I. Appellee's counsel, while apparently conceding that a composition agreement between a debtor and his creditors, by which, without the formality of a statutory assignment for the benefit of creditors, or bankruptcy proceedings, the debtor's available estate may be distributed *pro rata* to his creditors, and that an agreement by the latter to accept such distribution in full satisfaction of their several claims will be valid in law, yet take the position that the composition made, or attempted to be made in this case, was incomplete and abortive. If we understand counsel, the argument is this: By the terms of the assignment or trust instrument, Pray & Comerford reserved

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS: construction and operation: non-statutory assignments: failure to meet conditions: effect.

the right to withdraw the same and have their property re-
turned to them "if all the creditors save and except not more
than $100 in amount do not agree thereto;" but, in the "event
that all of the creditors (except not more than $100 in
amount) shall within 15 days from this date make, execute and
deliver to Pray & Comerford in writing a release releasing the
said Pray & Comerford and each of them from any and all lia-
bility of any kind for and on account of any and all demands
said creditors now have against the said Pray & Comerford
or either of them, then and in that event said debtors may
not rescind this agreement or any part of the same, but this
agreement and conveyance shall be absolute."   Counsel in-
terpret this as meaning that, in the event that creditors
holding claims to the amount of $100 should fail to signify
their acceptance in the manner mentioned in the assignment,
then the composition attempted was to fail, and that, as
plaintiff did not accept or sign the proposed release, and as
their claim exceeds $100, the composition must be regarded
as ineffectual and constituting no defense to this action.

The proposition is unsound for at least two reasons.   In
the first place, the assignment will not bear the interpreta-
tion placed upon it; and in the second place, it ignores the
form and substance of the consent which plaintiff did give
to the proposed composition.

The condition or reservation made in the assignment was
not that it should fail or be held for naught if the required
proportion of the creditors did not sign an acceptance of its
terms and execute a release to Pray & Comerford, but the
provision was simply that, if such consent was not obtained,
"then and in that event, if either of said debtors so notify
in writing, said trustees shall and will immediately reconvey
said property to Pray & Comerford;" and, as already shown,
the alternative provision was that, if the required consent
and release were obtained, then the debtors "may not rescind
this agreement."   In other words, failure to get the consent

of the- required proportion of the creditors was not to work an automatic dissolution of the agreement, but simply to give the debtors the right to rescind or recall it; and if this right was not exercised, the assignees could properly proceed to carry out the trust, and no creditor taking part therein and accepting the benefits thereof may be heard to deny its effectual character for no better reason than that some other creditor has refused to join in the composition.

Again, while it is true that the plaintiff in this case did not sign the form of acceptance and release submitted to it by the assignees, it would seem to have effectually estopped itself from claiming any advantage on that account; for it confessedly did, in a separate writing, addressed and delivered to the assignees in response to their notice and request, say to them:

**2. ASSIGNMENTS FOR BENEFIT OF CREDITORS: nonstatutory assignments: acceptance by creditors.**

"We therefore desire to advise you that the proposed method of liquidation as outlined in yours of May 5 is perfectly satisfactory to us and you can count on our assistance. . . . We are not signing the acceptance and release because we do not want to bind ourselves in such a way that, in case your plan does not go through, we cannot take steps on our own, responsibility."

At the same time, plaintiff filed with the assignees its claim for $260, and without objection permitted the assignees to ·administer the trust, and, upon final distribution, accepted their check for its proportionate share of the proceeds "in full of the account of Pray & Comerford." It was not at all necessary that plaintiff should have signed the consent or release in the very form submitted by the assignees; it was enough if such consent in substance and effect was given in a letter or other writing made and delivered. The reason for not signing the form submitted was not because plaintiff objected to the composition, but was simply to leave it free to take other steps for collection of their claim if the

plan proposed—the composition agreement—did "not go through." It did "go through;" the property of the debtors was disposed of and the proceeds distributed to the creditors, including plaintiff; and we can discover no valid ground on which any creditor participating in such composition can be heard to say it was "incomplete" or ineffectual. A composition is an agreement, not merely between the debtor and his creditors, but it is an agreement between the participating creditors each with all the others; and it would not be consistent with the good faith which the law requires for any one creditor to enter into such an agreement and obtain the benefit thereof, and then deny the binding effect of his acceptance of his dividend in full because his consent to the composition was informal or equivocal in its terms. The law looks to the substance of the transaction. There is neither plea nor proof that the composition was vitiated by fraud; that is, there is nothing whatever to show that Pray & Comerford, while accepting and receiving the benefit of their release from their debts upon payment of a fractional part thereof, withheld any portion of their assets, or had any secret arrangement or agreement by which some of the participants in the composition were to be paid in full or in larger proportion than others. None of the authorities cited for the appellee appear to be in point with the case presented by this record, and we must hold that the plaintiff's failure to sign the particular acceptance and release presented by the assignees does not exempt it from the binding effect of the settlement.

II. Plaintiff further contends that, even assuming the entire validity of the composition agreement, the payment and acceptance of the dividend therefrom had no effect to discharge or release the defendant as surety 3. COMPOSITION WITH CREDITORS: operation and effect: receipting claim in full: unknown existence of bond: effect. upon the bond given by the contractors. The ground for this argument is said to be in the conceded fact that two of the creditors participating in the composition received the

remainder of their claim in full from the defendant surety company, and in the fact that, at the time of receiving and accepting the dividend paid by the assignees, plaintiff did not know of the existence of the bond or its provision for the benefit of Pray & Comerford's creditors, and that, had plaintiff known thereof, it would not have accepted such dividend. Admitting these facts, as we must, we are still of the opinion that they afford no ground for the legal conclusion that counsel would draw therefrom. In the first place, it is not charged, nor is there any evidence to show, that the defendant surety company figured in any manner in bringing about the composition agreement, or even had knowledge thereof, or that it at any time did or said anything to deceive or mislead the plaintiff. Nor does it appear that, when the composition agreement was made, or when the proceeds thereof were distributed and accepted, there was any secret arrangement or understanding by which the two participating creditors referred to should be paid by the surety company the remainder of their claims in full. In the absence of any showing of that nature, we think it must be assumed that all parties to the composition were acting in good faith, and that there was an entire equality of advantage between all the participating creditors, with the result that the acceptance of the dividend by each operated as a discharge of the debt due each. Such being the case, if some one of the creditors succeeded in inducing the surety company to make up the loss he had sustained, it does not amount to a fraud upon other creditors so favored, nor serve in any manner to vitiate or avoid the composition agreement which had been performed and satisfied according to its terms. Neither does the mere fact that the surety company has voluntarily paid the loss of one or more of the participating creditors constitute any reason in law why it should be held to pay others.

It is said the opposite conclusion should be reached, because plaintiff did not know of the existence of the bond or

of its terms when it accepted the benefits of the composition agreement in satisfaction of its claim. It is not alleged, nor is it admitted in the agreed statement, that the defendant or anyone else deceived the plaintiff in this respect. It is said in argument, however, that the existence of the bond was doubtless known to the assignees when they advised plaintiff to enter into the composition agreement, and that their failure to impart that knowledge to plaintiff was in effect a fraud by which it was misled in the matter, when, had it known the truth, it would have refused to have any part in the composition. There is no proof that the assignees knew any more of these facts than did the plaintiff itself, or that, if they did know it, they could not rightfully assume or take for granted that plaintiff was just as well informed as themselves. The custom or practice of requiring contractors upon public buildings to give bond for the performance of their work is quite universal, and it is scarcely less customary, in recent years at least, to require the bond to be conditioned for payment of claims for labor and for materials furnished by subcontractors. Inquiry which these things would naturally suggest would, no doubt, have revealed the bond and its terms to any person dealing with the contractors. This is so obvious that no fraud or wrong can be implied from the failure of the assignees to specifically mention a fact which was as open to plaintiff as to themselves, assuming (which is not shown) that they were aware of it. Their statement to the plaintiff had reference to the assets and liabilities of Pray & Comerford, and, so far as it appears, it was entirely truthful. In short, we cannot find that plaintiff's ignorance of the existence of the bond, or the fact that plaintiff would not have released its claim had it known the truth in this respect, affects the legal efficiency of the composition. The bond was no part of the assets of the debtors. The surety thereon could rightfully remain

*4. FRAUD: acts not constituting fraud: withholding knowledge of facts.*

silent and allow the debtors to compromise their claims with their creditors if they could; and if the creditors, either by composition, agreement or otherwise, made a valid release of their claims, the debts being extinguished, right of recovery against the surety ceased with the discharge of the principals. It would be an anomaly in law to say the discharge of the principal debtor is valid, and yet hold the debt still existent for the purpose of charging the surety thereon. The rule obtaining as between creditor and surety in bankruptcy proceedings under the act of Congress has no apparent application where the principal debtor is discharged by agreement of the creditor.

In our judgment, the plaintiff failed to show any valid ground for recovery, and the trial court was in error in entering the judgment appealed from. The judgment is, therefore, reversed, and cause remanded for further proceedings not inconsistent with the views herein expressed.—*Reversed and remanded.*

GAYNOR, C. J., EVANS and PRESTON, JJ., concur.