540 P.2d 179

**SOUTHWESTERN RESEARCH CORPORATION, Appellant,**

v.

**Ed CALIENDO, Assignee of Hyer Associates, Inc., a corporation, Appellee.**

**No. 1 CA–CIV 2800.**

Court of Appeals of Arizona,
Division 1,
Department B.
Sept. 18, 1975.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P. C., by Lorin G. Tobler, Phoenix, for appellant.

Wilson, McConnell & Moroney, P. C., by Beverly J. McConnell, Phoenix, for appellee.

## OPINION

JACOBSON, Presiding Judge.

This appeal raises the issues of the timeliness of a consent by a creditor to an as-

signment for the benefit of creditors and the sufficiency of the creditor's claim.

The appeal in this matter arises from the denial of appellant's, Southwestern Research Corporation (Southwestern), creditor's claim against Hyer Associates, Inc. (Hyer), an insolvent corporation, which had filed a petition for an Assignment for Benefit of Creditors pursuant to A.R.S. § 44-1031 (1967) et seq. Appellee, Ed Caliendo, was appointed assignee and disapproved Southwestern's claim which disapproval was upheld by the trial court. Initially, Caliendo had objected to Southwestern's claim on the basis that its debt was in fact capital contributions made to Hyer, Hyer being a wholly-owned subsidiary of Southwestern. However, on stipulation, the sole issue presented to the trial court was whether Southwestern had timely consented to the assignment for benefit of creditors and, if so, whether its claim was statutorily sufficient.

The trial court upheld the disallowance without designating its reasons and Southwestern has appealed.

The basic determinative facts on appeal are not in dispute. On September 14, 1971, Hyer filed a Petition for an Assignment for the Benefit of Creditors, requesting that Caliendo be appointed as assignee. It appears that Hyer is a wholly-owned subsidiary of Southwestern, which prepared and approved the petition. Caliendo was appointed assignee and on October 18, 1971 filed a Notice to Creditors. This notice required creditors of Hyer who wished to share in the proceeds of the debtor's assets to file written consents to the assignment within four months of the date of the last publication and to give supporting evidence of their claims within six months of the date of the first publication. The first notice to creditors was published on October 19, 1971 and the last on November 9, 1971.

In addition to publication of the notice to creditors, the assignee caused Creditor's Claim and Consent to Assignment forms to be mailed to creditors of Hyer listed in its petition for assignment. Although Southwestern was listed on the petition as a creditor, the affidavit of mailing does not show that Creditor's Claim and Consent to Assignment forms were mailed to Southwestern.

During the course of the administration of assignment, Southwestern made several inquiries concerning the handling of the matter and specifically requested copies of all notices and pleadings pertaining thereto. On March 6, 1972, the attorney for Southwestern again wrote Caliendo requesting information required of Southwestern in order to file a claim. This letter in part stated:

"To this date, to the best of our knowledge, no one in Southwestern Research or at this office has received any information about the handling of the assignment for benefit of creditors or the manner in which claims are to be filed. No notices were ever received, and as you may recall, I requested that copies of all notices be forwarded to this office.

"It is imperative that an accounting be made and that the procedure by which we are to file claims be established."

The four month time period within which to file consent to the assignment expired on March 9, 1972. On this date, Creditor's Claim and Consent to Assignment forms were mailed to Southwestern. On April 12, 1972, Southwestern completed these forms and returned them to Caliendo. Southwestern's claim was for $699,054.43 for "monies loaned to Hyer Associates and advances made to Hyer." Attached to this claim were 15 promissory notes totalling $371,621.69 as principal. It appears that the letter of March 6, 1972 was within the four-month period from the last date of publication of notice to creditors and that the claim filed on April 12, 1972 exceeded this time period, but was within the six months of the first publication of the notice to creditors of the appointment. If allowed, Southwestern's debt represents 84% of the total indebtedness of Hyer.

As previously indicated, the merits of Southwestern's claim were not presented to the trial court and the sole issues presented were the timeliness of Southwestern's consent and claim, and its sufficiency. In this regard, the trial court by minute entry held:

"The court determines that the parent company [Southwestern] having had full knowledge and having participated in the Petition was aware of all the statutory requirements;

"Therefore It is Ordered granting Assignee's Objections to the claim of Southwestern Research Corporation."

Before discussing the legal issues raised, it is helpful to place the operation of Assignment for the Benefit of Creditors in perspective. Article 3, Ch. 8, Title 44 entitled "Assignments for the Benefit of Creditors" provides that an insolvent debtor may assign all of his assets to a third party designated as an "assignee" for the benefit of his creditors. Any creditor who consents to the assignment is entitled to share in the assets so assigned, and by so consenting agrees to take his proportional share of the assets and thereby discharge the debtor from all further liability. However, only consenting creditors are allowed to share in the assets and non-consenting creditors retain their cause of action for their total indebtedness against the debtor, but are not allowed to share in the distribution of assets. (A.R.S. §§ 44–1032 and 44–1037).

A debtor's petition for Assignment for Benefit of Creditors is filed with the Superior Court of the county where the debtor's principal place of business is conducted and the Superior Court has the same jurisdiction over the insolvent estate and the assignee as that of a receiver appointed by the court. A.R.S. §§ 44–1033 and 44–1036.

Time limitations are placed on giving notice of the appointment of the assignee (A.R.S. § 44–1035), the filing of written consents by the creditors to the assignment (A.R.S. § 44–1037) and the proving by the creditor of his claim (A.R.S. § 44–1038). It is these last two statutes (A.R.S. §§ 44–1037 and 44–1038) which are pertinent in this appeal.

Following the filing of Creditor's Consent and Claims, the assignee is empowered to reduce the debtor's assets to cash, pay the consenting creditors' proven claims proportionately, receive discharges from these creditors and terminate the assignment. (A.R.S. §§ 44–1045, 44–1046).

Turning then to the timeliness of Southwestern's consent to the assignment in this case, A.R.S. § 44–1037 (1967) provides as follows:

"Creditors consenting to the assignment shall give the assignee written notice of *consent* within four months after publication of the notice required under § 44–1035, and a creditor not *assenting* shall not receive or take any benefit under the assignment. A creditor who has no actual notice of the assignment may make known his *assent* any time before any distribution of assets is made under the assignment. Receipt by a creditor of any portion of his claim from the assignee is conclusive evidence of the assent of such creditor to the assignment." (Emphasis added.)

Southwestern first asserts that an ambiguity exists in the statute by reason of the use of the words "consent" dealing with a written requirement by the creditor and the words "assenting" and "assent" dealing with the failure to comply and subsequent compliance. Southwestern argues that "consent" has connotations of positive action while the word "assent" denotes passive or submissive action. *See State v. McDaniel*, 80 Ariz. 381, 298 P.2d 798 (1956). From this alleged ambiguity, Southwestern contends that the statute must be liberally construed to allow creditors to take under the statute. Therefore, the argument continues, its passive conduct as owner of Hyer, in allowing Hyer to file the petition initially amounts to an "assent" to the assignment and thus timely compliance with A.R.S. § 44–1037.

There is no doubt that at common law, Southwestern's argument might have some validity for under the common law any act, conduct or declaration on the part of the creditor indicating that he consented to the assignment constituted sufficient consent to· act as an intent to accept benefits under the assignment. *Nutter v. King,* 152 Mass. 355, 25 N.E. 617 (1890). In this common law context of legal understanding, the word "assent" in the field of Assignments for the Benefit of Creditors was a word of art denoting consent to acceptance of benefits under the deed of assignment, either by written instrument or implied conduct. However, Arizona has abolished common law Assignments for the Benefit of Creditors, A.R.S. § 44–1031(C), and such assignments are now purely statutory.

■■■ When A.R.S. § 44–1037 is read in this light, the word "assent" as used therein still retains its common law word of art meaning, that is, consent to acceptance of benefits under the assignment, but the first sentence of that statute makes it clear that such "assent" can only be accomplished by giving "the assignee written notice of consent". We therefore interpret the words "consent" and "assent" as used in A.R.S. § 44–1037 to mean the same thing—consent to acceptance of benefits. Accordingly, we hold that A.R.S. § 44–1037 is not ambiguous on this ground, and that written notice of the consent to the assignment being the only statutorily approved method, Southwestern's conduct in allowing Hyer to file the petition initially does not constitute such statutory consent.

■■■ We do not find the last sentence of this statute reading "Receipt by a creditor of any portion of his claim from the assignee is conclusive evidence of the assent of such creditor to the assignment" to mean that pre-payment conduct other than a written notice of consent to the assignment shall constitute statutory acceptance. In our opinion, this sentence merely estops the creditor who has received benefits un-der the assignment, from subsequently arguing non-consent.

We next turn to Southwestern's second contention, that its attorney's letter of March 6, 1972 (three days prior to the termination of the four month filing period) constituted a "written notice of consent" to the assignment.

■■■ We first note that the statute does not mandate the form that the written notice of consent must take. We therefore must conclude that any written instrument conveying to the assignee the consent of the creditor to the assignment will suffice and that such a conveying of consent need not be on the exact forms supplied by the assignee. *See, American Blower Co. v. Lion Bonding & Surety Co.,* 178 Iowa 1304, 160 N.W. 939 (1917).

In analyzing the letter of March 6, 1972, the following appears: "It is imperative that an accounting be made and *that the procedure by which we are to file claims be established.*" Such language, in our opinion, clearly evidences an intent to file a claim by Southwestern and thus a consent to the assignment. That the assignee was not misled in this interpretation is evidenced by the assignee's attorney's letter in response:

"Southwestern Research, the parent company, of course is fully aware of the assignment for the benefit of creditors, and it was with their *consent* and *approval* that the assignment was made."

In our opinion, A.R.S. § 44–1037 was intended to accomplish two purposes: (1) To timely inform the assignee of these creditors who had consented to the assignment so that the administration of the insolvent estate could proceed in an orderly manner and (2) to lock into the assignment those creditors who consented and to lock out those who did not. Obviously the letter of March 6, 1972 accomplished the first purpose. In our opinion, the language used was not so equivocal as to allow Southwestern to say it did not in-

tend to consent to the assignment,[1] and thus the second requirement is satisfied.

We therefore hold that Southwestern timely filed a "written notice of consent" with the assignee so as to comply with A. R.S. § 44–1037. Because of our holding on this point we do not reach the contention of Southwestern that the assignee is estopped to raise the timeliness of its consent by failing to send to Southwestern consent forms mailed to other creditors.

■ Having determined that Southwestern timely filed its consent to the assignment, we must now determine whether the claim filed by it on April 12, 1972, was sufficient. A.R.S. § 44–1038 (1967) provides:

"Every creditor, consenting to an assignment, shall, within 6 months from the time of the first publication of the notice of appointment of the assignee, *file with the assignee a distinct statement of the particular nature and amount of his claim against the debtor,* which shall be supported by an affidavit of the creditor, his agent or attorney, that the statement is true, that the debt is just and that there are no credits or offsets that should be allowed against the claim, except as shown by the statement. No creditor shall take any benefit under the assignment whatever who neglects to file this statement." (emphasis added)

The assignee contends that Southwestern's statement that its indebtedness was for "monies loaned to Hyer Associates and advances made to Hyer" does not comply with the emphasized portion of the statute. As to that portion of Southwestern's claim represented by the attached 15 promissory notes, we find this contention specious.

Moreover, we find that the amount stated satisfies the statutory requirements. While the nature of the "advances" made to Hyer might be set forth with more particularity, it is generally held that substantial compliance with the statute is all that is required. 6 CJS Assignments for Benefit of Creditors § 311 Pg. 1390. In our opinion "advances" may very well be the only noun which describes the "particular nature" of the transaction between Southwestern & Hyer and is at least descriptive enough to allow the assignee to ascertain the nature of the claim, and thus contest it. This is particularly true when the assignee's own file indicates that certain creditors originally listed on Hyer's petition had in fact been paid by Southwestern. Moreover, where the assignee in this case originally objected to Southwestern's claim on the basis that "the alleged indebtedness of the . . . Southwestern Research claim were in fact contributions to capital and thus are not subject to repayment to the prejudice of creditors of the 'debtor', " it is difficult for this court to say that the assignee was misled as to "the particular nature" of the claim. This issue, of course, is still to be litigated. We therefore hold that the claim of Southwestern substantially complied with A.R.S. § 44–1038, and was not subject to being rejected on this ground.

By reason of the foregoing, the judgment of the trial court sustaining objections to Southwestern's claim on the basis of untimeliness and sufficiency is reversed and the matter remanded for further proceedings as to the objection to the claim on its merits.

EUBANK, J., and HAIRE, Chief Judge, Division 1, concur.

---

1. In *American Blower Co. v. Lion Bonding & Surety Co., supra,* the letter to the creditor stating: "We, therefore, desire to advise you that the proposed method of liquidation . . . is perfectly satisfactory to us, and you can count on our assistance" was a sufficient written consent to bind the creditor to acceptance of benefits under the assignment. 178 Iowa at 1311–12, 160 N.W. at 942.