**227 P.2d 749**

**STATE v. BETTS.**

**No. 1007.**

Supreme Court of Arizona.

Decided Feb. 13, 1951.

364

Leslie C. Hardy, Phoenix, for appellant.

Fred O. Wilson, Atty. Gen., Phil J. Munch, Asst. Atty. Gen., for appellee.

PHELPS, Justice.

This is an appeal by the defendant John H. Betts from a judgment entered upon a verdict of a jury finding him guilty of perjury. The charging part of the information against defendant reads as follows:

"In the name and by the authority of the State of Arizona John H. Betts is accused this 20th day of January, 1950, by the County Attorney of Maricopa County, State of Arizona, by this information, of the crime of Perjury By False Report Under Oath, a felony, committed as follows, to-wit:

"The said John H. Betts, on or about the 11th day of May, 1948, and before the filing of this information at and in the County of Maricopa, State of Arizona, by the president of a corporation, to-wit: Southwestern Mines, Inc., organized and doing business in this state, and as such president did, on or about the 10th day of May, 1948, subscribe and swear to the annual report of said corporation as required by Section 53–901 A.C.A. 1939, and did then and there wilfully, and feloniously make and deliver such report to the Arizona Corporation Commission, knowing the same to be false, in violation of Section 43–4206, A.C.A. 1939, contrary to the form, force and effect of the statue in such cases made and provided and against the peace and dignity of the State of Arizona."

Section 53–901 A.C.A. 1939 provides that: "*Registration fee and report—Contents.—* Every corporation organized or doing busi-

ness in this state, except religious and other corporations not for profit, shall, in June of each year, pay an annual registration fee of fifteen dollars ($15.00) to the corporation commission, in addition to any specific license or other tax imposed by law upon such corporation; and at the time file with the said corporation commission a report subscribed and sworn to by its president and secretary, showing its assets, liabilities and accumulations, the amount of its capital stock paid up and issued, and a statement showing in detail all property both real and personal owned, leased or controlled by the corporation, and in what place or places the same is situated, and the value thereof."

Section 43–4206 under which defendant was prosecuted, reads: *"False return or report under oath, perjury.*—Every person who, being required by law to make any return, statement or report, under oath, wilfully makes and delivers any such return, statement or report, purporting to be under oath, knowing the same to be false in any particular, is guilty of perjury, whether such oath was in fact taken or not."

The facts are that in May, 1948, defendant Betts was president of the Southwestern Mines Incorporated, a corporation organized and doing business in the state of Arizona and then engaged in the development or operation of mining property in Cochise County. At a meeting of the board of directors of the corporation on May 9, 1948, in Douglas, Arizona, the annual report of the corporation was discussed and prepared for filing with the Corporation Commission and was subscribed and sworn to by defendant as president of the corporation and by its secretary as required by the provisions of section 53–901, supra. May 9th was on a Sunday and by agreement among the members of the board of directors the annual report and other instruments prepared on that date including a mortgage given by the corporation in the sum of $181,826.46 in favor of Edna D. Betts, wife of defendant, and one Frances Riccardi, were all dated May 10, 1948. The annual report of the corporation was filed with the Corporation Commission the next day, May 11th. By whom it was actually delivered to the corporation for filing is not shown and the witness Eisenhart, an employee of the corporation commission who received and filed it, does not recall who presented or requested its filing but testified that it was received and filed in the regular course of business. The report showed the liabilities of the corporation to be $10,000 when in fact its liabilities were much in excess of $181,826.46, the amount of the mortgage above mentioned. It was upon this discrepancy that the perjury charge was prosecuted.

The defendant has specified a large number of errors which we will consider in the order of their specification, the first of which is that the court erred in not granting defendant's motion to dismiss the information both at the close of the

state's case in chief and at the close of the entire case. The reason assigned is that it then appeared for the first time that the offense was committed partly in Cochise County and partly in Maricopa County whereas the information charged its commission in Maricopa County. Defendant contends that the information should have charged that the false report was made in Cochise County and filed in Maricopa County. We cannot agree with this contention. It is wholly immaterial where the report was made or where the oath was administered, or even whether the oath was valid. The gist of the offense lies in its wilful delivery to the Corporation Commission (knowing it to be false) for the purpose of having it filed in accordance with the provisions of section 53–901, supra. This section of the statute applies to foreign as well as domestic corporations. If the Southwestern Mines Incorporated had been incorporated in New York with its principal place of business in New York City and the report had been made and subscribed to under oath in that city certainly counsel could not logically contend that such fact would place defendant beyond the pale of the Arizona statute upon which this charge of perjury is predicated. If defendant's contention is correct the courts of this state in such cases would have no jurisdiction whatever in the prosecution of a defendant for perjury. In the absence of a Federal statute covering the subject matter, foreign corporations could violate the law

with impunity. The cases cited by defendant upon the points raised have no application here. Specifications II, III, IV, V and VI are based upon the same grounds and are without merit.

■ Specification No. VII is based upon the following language in the oath to the effect that the report "is a true and correct statement to the best of our knowledge and belief." The defendant contends that this is not an unequivocal oath that the report is true but is merely made on information and belief and that therefore such oath cannot form the basis of a prosecution for perjury. He cites cases to support the proposition that an oath based upon information and belief will not form the basis of prosecution for perjury but there is a vast difference between an oath based upon one's own knowledge and one based upon information and belief. And there is a vast difference between the language of the statute under which those cases were prosecuted and the statute in the instant case. Let us assume, however, that the oath is technically equivocal. Does this relieve defendant from being subject to the provisions of the act? We think not. The purpose of this Act was to keep the Corporation Commission advised of the financial status of both foreign and domestic corporations, like the one here involved, and of their activity in the state. This information is necessary for the use of the commission in its exercise of a proper control over corporations such as granting or refusing

permits to sell stock in the state. It also has the further purpose of enabling any one seeking information concerning the business affairs of such corporations to obtain the same through the public records kept by the Corporation Commission.

In order to prevent frauds from being perpetrated upon the public by means of false reports filed by such corporations the legislature enacted section 43–4206, supra. It will be observed that this section does not fall within the definition of perjury as denounced in section 43–4201, A.C.A. 1939, but is entirely in addition thereto and wholly separate therefrom. It follows that the rules with respect to the validity of the oath taken under the provisions of section 43–4201, supra, do not have any application whatever to the offense of perjury defined under the provisions of section 43–4206, supra. No authorities have been cited to support such a contention. The cases cited apply exclusively to perjury as defined under section 43–4201 and like statutes.

Again let us observe that the gist of the offense in the instant case consists not in the making and the signing of the report under oath but it lies in the wilful delivery to the Corporation Commission for filing, a false report purported to be under oath, knowing the same to be false. We thoroughly agree with the principles of law set forth in the cases from California and other states cited by appellant under statutes the same as section 43–4201. Under

that statute the oath must be administered by one qualified to administer oaths and the oath must be valid and unequivocal but where the legislature sets up an entirely new combination of circumstances as it did in section 43–4206 which it says also constitutes perjury those rules have no application here.

Under the provisions of section 43–4206 it is not necessary as above stated that the president, signing the report, subscribe to a valid oath. It is enough if the report purports to show that it was subscribed to under oath. The statute was so worded and it was the intent of the legislature to make sure that any person who filed a false report for such corporation would not be allowed to interpose the defense that he didn't actually sign the report under oath; that he didn't authorize any one to affix an oath thereto or that the person who administered the oath was not a duly commissioned notary public or other officer authorized to administer oaths. It was intended that such purported oath would be deemed a valid oath as the statute clearly states "whether such oath was in fact taken or not." Therefore, even if the name of Henry I. Johnson, Notary Public, had been forged or the oath administered by some one who had no authority whatever to administer oaths, if Betts knowing this fact to be true nevertheless filed such report, caused it to be filed, or knowingly permitted it to be filed with the Corporation Commission he is gulty of perjury under the clear and unambiguous

language of the statute. No suggestion has been made nor could any be made that the legislature under its plenary powers could not declare the acts and things set up in section 43-4206 to constitute perjury. This being true we are not here concerned with common law definitions of perjury or the statutory definitions thereof in other states such as are contained in section 43-4201, supra. For the reasons above set forth it was not necessary for the state to negative, in the information, the belief of defendant contained in the oath to which he subscribed. The question raised in specification of error No. VIII falls within the category of specifications I to VI inclusive and therefore needs no further discussion.

■ Specifications of error Nos. IX and XI are based upon the proposition that the offense was not proved by two witnesses nor by one witness and corroborating circumstances. Let us see what the evidence shows. The witness Eisenhart testified that she received and filed the report with the commission in the regular course of business on May 11, 1948. The report itself is in evidence showing that it was filed with the commission on that date thus we have the filing of the report testified to by the witness Eisenhart and corroborated by the report itself showing such filing and produced in court by the Corporation Commission. Both Henry I. Johnson and defendant testified that the report was made by Johnson and sworn to by Betts. The defendant further testified that he signed and subscribed his oath to the report for the purpose and with the intent that it should be filed with the Corporation Commission as provided by law. The report itself has printed across the top thereof the following:

"Annual Report of
"Southwestern Mines Incorporated
"at close of business on May 1, 1948, submitted to Arizona Corporation Commission, Phoenix * * *"

This corroborates defendant's testimony if it needs corroboration, that he intended it to be filed with the Corporation Commission. The law does not require that defendant file the report himself. It is enough if he caused it to be filed or permitted it to be filed. People v. Robles, 117 Cal. 681, 49 P. 1042. There is no evidence that defendant ever changed his mind or ordered that the report should not be filed with the commission as required by law. Betts therefore either filed it or caused or permitted it to be filed. This is supported by the evidence of Betts and Johnson to the effect that it was made with the intent that it would be filed. The only other element of the offense to be proved is that the report was false. The document shows a liability of $10,000. Defendant Betts admitted upon the witness stand that the liabilities of the corporation aggregated $181,826.46. This amount he said was a valid indebtedness due to his wife and Frances Riccardi for money actually advanced by them to the corporation. This is corroborated by a realty mortgage

executed in favor of these parties in that amount signed by Betts and the secretary on May 10, 1948, the same day the report was made and subscribed to under oath by the defendant. Under all the evidence this indebtedness existed on May 1, 1948. We think the statute requiring the offense to be proved by at least one witness and corroborating circumstances has been fully met.

■ There remains one other question for our disposition. This is raised in defendant's specification of error No. 10 and is directed to the court's instruction on circumstantial evidence. The instruction complained of follows: "Now, ladies and gentlemen of the jury, I mentioned to you in an instruction heretofore that it was incumbent upon the State that the defendant delivered, or caused to be delivered, the report that has been submitted in evidence to the Corporation Commission. Now, as counsel have suggested on both sides that that involves a question of circumstantial evidence, I will give you an instruction on the law concerning circumstantial evidence. Under the law there are two kinds of evidence, direct and circumstantial. Direct evidence is that sort of evidence by which a fact is proved directly and without inference from other facts, and is usually given by witnesses who saw, heard, or otherwise observed some particular fact or occurrence. Now, circumstantial evidence is that sort of evidence by which an inference of an unknown fact is drawn from the existence of known facts. It is based on inferences or conclusions which are the logical result of reasoning from the known to the unknown fact. Circumstantial evidence is just as good in law as any other sort of evidence provided it satisfies the mind fully of the proposition sought to be proved. Circumstantial evidence alone is enough to support a verdict of guilty providing the jury believe beyond a reasonable doubt that the accused is guilty upon the evidence. No greater degree of certainty is required where the evidence is circumstantial than where it is direct. You are bound by your oath to render a verdict upon all the evidence in the case, and the law makes no distinction between the direct evidence of a fact and circumstances from which the existence of a fact might be inferred. However, to sustain a verdict founded upon circumstantial evidence alone, the circumstances themselves must be proved to the satisfaction of the jury, and in all such cases the circumstances proved must be such as to lead to no other legitimate conclusion except the guilt of the accused, or in other words, the circumstances must exclude every other hypothesis except that the accused is guilty as charged."

■ This instruction in the ordinary criminal case is a perfectly good instruction and clearly assigns to circumstantial evidence its proper office in such cases. But that is not true in a perjury case where the statute expressly prescribes what the character and the quantum of the evidence shall

be. Section 44–1812, A.C.A. 1939 provides in part that perjury must be proved "by the testimony of two (2) witnesses, or one (1) witness and corroborating circumstances."

The effect of the court's instruction was that the filing of the report of the mining corporation, under oath, by the defendant as its president, with the Corporation Commission (which is the gist of the offense in this case) could be proved alone by circumstantial evidence when, as a matter of law, it had to be proved by either two witnesses or by one witness and corroborating circumstances. The fact that the record shows that the filing of the report as alleged was testified to by the witness Eisenhart and by corroborating circumstances did not relieve the court of its duty to instruct the jury concerning the requirements of the statute whether requested or not. It was the intent of the legislature that the one witness whose testimony is required to be corroborated by circumstantial evidence in perjury cases should be a credible witness to whose testimony the jury is entitled to give credence. However, under the instruction of the court the jury was entitled to wholly reject the tesimony of the witness Eisenhart and base its verdict solely upon the circumstantial evidence. It was so told in unmistakable language. This was prejudicial error. But aside from this it was the duty of the court to instruct the jury that the defendant could not be convicted of perjury unless the perjury was proved by two witnesses or by one witness and corroborating circumstances whether requested to do so or not because it is the duty of the court in criminal cases to give instructions on the general, fundamental principles of the law pertaining to the offense charged. In the case of People v. Dobkin, 74 Cal.App.2d 269, 168 P.2d 729, 731, in a prosecution for a criminal offense wherein the testimony of an accomplice was involved, the court said: "* * * 'Under this state of the case, and assuming that the corroborative evidence, admittedly slight, was sufficient to support the conviction, it was very material to the defendant to have the law as to the testimony of accomplices explicitly stated to the jury. * * *'"

In the case of People v. Katcher, 97 Cal. App.2d 209, 217 P.2d 757, 761, in a prosecution for obtaining property by means of false pretenses, under a statute which required that unless there was some writing evidencing the transaction, the offense must be proved by two witnesses or by corroborating circumstances. The Court in reversing the case for failure to instruct the jury to this effect said: "It must be concluded from the foregoing that in this case it was the duty of the trial court to give an instruction embodying the principle of law pertinent to this case, as stated in Penal Code section 1110. It was its duty to do this without request therefor, and its failure to do so constituted error."

And in the case of People v. Curran, 24 Cal.App.2d 673, 75 P.2d 1090, 1092, wherein the prosecution was being conducted under

the same statute as in the case of People v. Katcher, the court had this to say: "The trial court failed to instruct the jury that the defendant could not be convicted of the offense of obtaining property by false pretenses unless the pretenses be proven by the testimony of two witnesses or by corroboating circumstances. The failure to so instruct the jury constitutes reversible error. Although it is not the duty of the court to give instructions to the jury upon specific points developed by the evidence unless such instructions are requested, it is nevertheless the duty of the court in criminal actions to give to the jury instructions on the general principles of law pertaining to the case on trial. (Citing cases.) * * *"

See also 70 C.J.S., Perjury, §§ 76–77.

However much we may be of the view that the evidence produced satisfies the requirements of the statute with respect to proof, we cannot overlook the fact that a fundamental right of the defendant has been violated and it is possible as pointed out above that the conviction could have been based upon circumstantial evidence alone. All other specifications of error have been fully disposed of herein without specific reference thereto.

Judgment reversed and cause remanded for a new trial.

UDALL, C. J., and STANFORD, DE CONCINI and LA PRADE, JJ., concur.