298 P.2d 798
**STATE of Arizona, Appellee,**
v.
**Winston O. McDANIEL, Appellant.**
No. 1085.

Supreme Court of Arizona.
June 12, 1956.

Struckmeyer, Whitney & Perry, Phoenix, for appellant.

Robert Morrison, Atty. Gen., L. Alton Riggs, Sp. Asst. Atty. Gen., T. J. Mahoney, County Atty., Pinal County, and Irving Vincent, Deputy County Atty., Florence, for the State.

NICHOLAS UDALL, Superior Court Judge.

Appellant, Winston O. McDaniel, was informed against, tried and convicted of the crime of fellatio, a felony, and he appeals from the judgment and sentence of imprisonment.

On November 21, 1954, three teen-age boys residing at Florence attended a "Movie" in Coolidge. Afterward, between the hours of 10:00 and 11:00 p.m., they went to a cafe and there encountered defendant, a Coolidge high school teacher. The boys not having transportation home, defendant agreed to drive them as far as the "Y" and they would attempt to "hitchhike" on to Florence. However, upon arriving at that point, defendant agreed to drive the lads on home.

After two of the boys were taken to their homes, the complaining witness, a fourteen year old boy, climbed into the front seat and was alone with defendant. The substance of this boy's testimony was that defendant told him that he wanted to see his mother and upon such pretext drove toward his home which was some distance outside the city; that enroute defendant made inquiry of the boy about his private parts;

that defendant stopped his automobile and when the complaining witness started to get out, defendant told him it was no use getting out as the door was locked; that he did not agree to the lewd and lascivious acts, known as fellatio, which then were performed upon his body by defendant, but he admitted he did not resist because "* * * He could have had a knife or something there in the floorboard." On cross-examination the witness admitted that he saw no knife and that no physical violence was threatened by defendant. There was no proof that the door was locked nor that the boy was forced to remain in the car. The next morning, after observing her son's conduct, his mother at his request called the police, and he related the occurrence to the officer the following evening.

The testimony of various witnesses leaves no doubt with regard to the occurrences in Coolidge, that defendant took the three boys to Florence and that he took the complaining witness home after taking the other boys to their homes. The only direct evidence of the act of fellatio by defendant is the testimony of this boy. Defendant did not testify. However, there is other evidence to which reference will be made in the discussion of the assignments of error.

While defendant presents some fifteen assignments of error and thirteen supporting propositions of law we believe the legal problems raised fall into five categories which will be treated in such order as seems best.

384

### Accomplice Matter.

Defendant contends the court erred in not granting his motion for an instructed verdict because the evidence, as he construes it, shows the complaining witness to be an accomplice and that there was a lack of corroboration of his testimony. It has always been the rule in this jurisdiction that "A conviction shall not be had on the testimony of an accomplice unless the accomplice is corroborated by other evidence * * *." Sec. 13–136, A.R.S.1956. There are numerous decisions of this court interpreting this statute, some of the more recent being: State v. Miller, 71 Ariz. 140, 224 P.2d 205; State v. Thomas, 79 Ariz. 355, 290 P.2d 470.

■ If the complaining witness in the instant case of his own volition participated in the act of fellatio he would in law be an accomplice, as was the prosecutrix in the Thomas case, supra. Inasmuch as defendant did not testify, the only evidence on this point is the testimony of the boy, who stoutly maintained that he did not enter willingly into the act of fellatio committed upon him by defendant and that the only reason he submitted was because of his fear that defendant would do him bodily harm if he refused.

■ A similar problem arose in the case of People v. Westek, 31 Cal.2d 469, 190 P.2d 9, 12. There the defendant was convicted of sodomy and lewd and lascivious conduct with young boys. The question of whether they were accomplices in relation to the alleged acts was submitted to the jury.

The decision recites that each of the boys admitted the commission of the acts and that he knew them to be wrongful, but each maintained that he was "afraid of" defendant and did not "willingly" participate in the acts. The trial court had covered in its instructions the law pertaining to accomplices as well as "the distinction between the consent necessary to constitute one an accomplice and mere assent and submission without consent". The importance of the latter consideration rested upon the premise that the boys' mere submission to the violation of their persons would not involve the criminal intent necessary to subject them to prosecution for commission of the acts and so classify them as accomplices. The court pointed out: ·

"Consent, in law, means a voluntary agreement by a person in the possession and exercise of sufficient mentality to make an intelligent choice, to do something proposed by another. 'Consent' differs very materially from 'assent.' The former implies some positive action and always involves submission. The latter means mere passivity or submission, which does not include consent."

We are in accord with the foregoing statements. Cf. Wharton's Criminal Evidence, 12th Ed., Vol. 2, Section 453. In the instant case we hold that the trial court did not err in submitting the issue of whether the complaining witness was an accomplice to the jury under proper instructions as to the law governing the matter. By its verdict of guilty the jury obviously believed the

complaining witness was telling the truth, hence it must necessarily have found (a) that the complaining witness was not an accomplice in this crime so as to require corroborating evidence, or (b) if an accomplice that his testimony was sufficiently corroborated by other competent evidence. (We shall further discuss this matter of corroboration later in the opinion.)

### Admissibility of Statement of Police Officer.

The chief of police of Coolidge was permitted to relate a conversation held with defendant regarding the pending charge. This conversation took place while the witness and defendant were riding from Florence to Collidge after defendant's preliminary hearing. Defendant objected upon the theory that if the testimony relating the conversation purported to be a confession a proper foundation had not been laid. The conversation was as follows:

"After we entered the car the conversation was opened by Mr. McDaniel with words to this effect: he turned to me and said, 'This is sure an awful mess, isn't it?' and I replied, 'Yes, Mac.' I said, 'It looks like you have really got your tail in a crack this time.' "

After objections were overruled, the witness continued:

"As my memory serves me, I told him that I was curious to know if a person—or, rather, if he had ever taken any steps to seek medical help in helping him to overcome his proclivity or desires for having unnatural sex acts with persons of the same sex as he."

After motions to strike the previous statement were overruled, the witness continued:

"Mr. McDaniel said, 'Yes,' he had during the past summer and times prior to that sought medical help and had been given shots by a physician. The name or location of the physician was not mentioned at the time. And he said that after getting these shots his condition that we had been discussing in the car was helped and relieved greatly until apparently the shots wore off prior to the incidents that had transpired at this particular time for which this hearing was being held."

On cross-examination the following questions and answers were made:

"Did he ever admit to this offense that he is charged with to you?

"Not specifically, no.

"Did he ever admit this offense that he is charged with at all?

"No."

Defendant assigns as errors the admission of the foregoing testimony (which he maintains falls into the class of a confession), upon the ground that there was no preliminary showing that such statements were freely and voluntarily given, and furthermore that they did not tend to connect defendant with the crime for which he was being tried. The rule regarding confessions does not apply to admissions made by a defendant. In Lawrence v. State, 29 Ariz. 247, 261, 240 P. 863, 868,

we quoted from the Kansas Supreme Court found in State v. Campbell, 73 Kan. 688, 85 P. 784, 9 L.R.A.,N.S., 533, as follows:

" 'A "confession," in a legal sense, is restricted to an acknowledgment of guilt made by a person after an offense has been committed, and does not apply to a mere statement or declaration of an independent fact from which such guilt may be inferred.

" 'Statements and declarations by a defendant in a criminal action in denial of guilt while a witness before a grand jury are not confessions within the rule requiring them first to be shown to have been made voluntarily before they are competent evidence against him.' "

■ We held in McDaniels v. State, 62 Ariz. 339, 158 P.2d 151, that statements which were mere admissions of fact and which might or might not prove incriminating in their effect and did not constitute a confession of guilt were admissible and the fact that such admissions, coupled with other facts proved at the trial, tended to establish the accused's guilt of crime charged does not require the State to lay the same foundation as for a confession. See also, State v. Romo, 66 Ariz. 174, 185 P.2d 757; State v. Johnson, 69 Ariz. 203, 211 P.2d 469. We hold that there was no error in admitting this testimony of the police officer, nor in refusing to strike the same, as the quoted evidence does not even purport to be a confession of guilt of the crime charged; rather, it is a statement of an independent fact possibly incriminating in its effect.

Evidence of other Similar Offenses.

Three witnesses, all minors, testified over proper objection to related acts of an immoral nature with the defendant at earlier dates than the events herein charged. Two of these youths, age sixteen, testified that a month before the offense in question defendant approached them after a show in Florence, offered to drive them to Coolidge "to show us his house", promising to let them drive his car and bring them right back. Once in defendant's quarters, both testified to repeated importunities to engage in the same type of act for which he is here charged, the revolting details of which were similar in each instance. Another youth, age seventeen, testified to a similar invitation to defendant's room, the inducement there being a promise of help in obtaining a job, and to the commission of similar acts on his person. All of these purported acts were within a month of the time of the offense for which defendant stands accused. By proper continuing objection this entire testimony was objected to as being inadmissible.

■ The bulk of the assignments of error raise the legal proposition that in the prosecution of a particular offense evidence of another crime entirely distinct and independent of that for which he is being tried is neither relevant nor admissible unless proof of one tends to establish the other.

Defendant concedes this court has recognized certain exceptions to the rule, but contends the instant case does not fall within any of these exceptions. With this we cannot agree. The general problem is treated in an annotation entitled "Admissibility, in prosecution for sexual offense, of evidence of other similar offenses", 167 A.L.R. 565, wherein on p. 569 it is stated:

"The majority rule is that in a prosecution for a sexual offense evidence is admissible which tends to show prior offenses of the same kind committed by the defendant with, or upon, the prosecuting witness. * * *"

A distinction is drawn as to prior offenses involving persons other than the complaining witness, prior to the commission of the crime charged, which is the narrow problem before us.

In analogous situations involving other sex offenses this same problem has been directly met in other courts with varying results. We find the reasoning of the U. S. Court of Appeals for the District of Columbia in the case of Bracey v. United States, 79 U.S.App.D.C. 23, 142 F.2d 85, 88, most persuasive:

"* * * Evidence of prior acts between the same parties is admissible, therefore, as showing a disposition to commit the act charged; the probabilities being that the emotional predisposition or passion will continue. The question has not been decided in the District of Columbia whether this exception to the general rule should include sex offenses committed by the accused upon other victims than the one named in the indictment. *Logically the exception would seem to include such other offenses. * * *"* (Emphasis supplied.)

See, contra, the discussion in State v. Sauter, 125 Mont. 109, 232 P.2d 731, and State v. Searle, 125 Mont. 467, 239 P.2d 995. Cf. Wigmore on Evidence, 3rd Ed. Vol. II, Sec. 360.

In the Arizona case of Taylor v. State, 55 Ariz. 13, 19, 97 P.2d 543, 545, evidence of acts of sexual relations with girls other than the prosecuting witness was held admissible within the exception pertaining to evidence of similar offenses tending to show

"* * * a system, plan or scheme embracing the commission of two or more crimes so related to each other that the proof of one tends to establish the other, * * *."

There, evidence of defendant's system of contact, persuasion and accomplishment of his nefarious purposes was held relevant, though it also tended to prove commission of other crimes. See also, State v. Pierce, 59 Ariz. 411, 414, 129 P.2d 916; State v. Martinez, 67 Ariz. 389, 198 P.2d 115.

In the instant case the testimony of these three other boys—as to the manner of meeting defendant, the inducements offered and the temptations flaunted before them, the insidious *modus operandi* on the part of defendant of an unnatural and lascivious nature—all tends to suggest a

scheme of seduction in many respects identical with that practiced in the instance for which defendant is here tried. That this evidence incidentally points to other possible crimes committed does not rob it of admissibility. The avowed limited purpose for which the testimony here was offered was:

"* * * to show through this witness and other witnesses the intent, the motive, disposition, the common scheme, plan or pattern practiced by the defendant, * * * ."

The trial court by its instruction to the jury properly limited the purpose for which this evidence could be considered by it.

There is still another relevancy in the evidence herein adduced. Certain crimes today are recognized as stemming from a specific emotional propensity for sexual aberration. The fact that in the near past one has given way to unnatural proclivities has a direct bearing upon the ultimate issue whether in the case being tried he is guilty of a particular unnatural act of passion. The importance of establishing this fact far outweighs the prejudicial possibility that the jury might convict for general rather than specific criminality. Even granting the general rule of inadmissibility of evidence of independent crimes to prove the offense charged, many courts recognize a limited exception in the area of sex crimes to prove the nature of the accused's specific emotional propensity. United States v. Kelly, D.C., 119 F.Supp. 217, 221; Bracey v. United States, supra.

See contra, People v. Westek, supra. This propensity tended directly to establish the offense for which the defendant herein was being tried, much as symptoms of a known disease suffered in the past tend to establish the presence of the same today. Of course, this exception would be subject to the limitation of relevant nearness in time, and would not apply to mere criminal tendencies in general as distinguished from specific sexual inclinations. Neither limitation is violated in the instant case. For the above reasons we hold the evidence of other sex deviations with other youths was admissible.

### Corroboration.

We next consider the matter of corroboration inasmuch as the jury may have found the complaining witness was an accomplice to the act charged against defendant. If he were an accomplice, there must be some admissible corroborating evidence which must, of itself and without the aid of the testimony of the accomplice, tend in some degree to connect the defendant with the commission of the offense. It need not, of course, be sufficient to establish his guilt; for, in that event, the testimony of the accomplice would not be needed. But it must tend, in some degree at least, to implicate the defendant. State v. Thomas, supra; State v. Cassady, 67 Ariz. 48, 190 P.2d 501.

Assuming without deciding that corroboration was necessary, is there sufficient evidence in the record to meet the requirements of the law? We think there

is. The evidence of the other two teen-age boys placed the defendant and the complaining witness in the car together that night. The boy's conduct the next morning indicated to his mother that something was wrong with him and a prompt, full disclosure to the officers was made the following evening. Coupled with this is the testimony of the police chief as to what defendant said (heretofore set forth in haec verba) on the day of his preliminary hearing. The jury could draw such reasonable inferences as justified from such statements regarding the securing of medical help to overcome his desires for unnatural sex acts. Certainly all of these matters, aside from the testimony of the complaining witness, constitute as a matter of law sufficient corroboration tending to connect defendant with the crime charged so as to warrant the trial court submitting the issue to the jury. The rule is well stated in Wigmore on Evidence, Vol. 7, Sec. 2059, p. 334:

"Under the statutory rule, the sufficiency of the evidence as satisfying the definition of the rule of law is of course for the judge, while its effect as actually making the accomplice's testimony trustworthy is for the jury."

### Denial of Mistrial.

█ The reporter's transcript shows that after one of the recesses counsel for defendant advised the court in chambers that Col. Randolph M. Evjen, a well known local newspaperman, addressing Harry Bagnall, one of counsel for defendant, had in the presence of other counsel and within the hearing of at least five jurors, who were then standing in the hallway, stated: "I Do Not Like The Company You Keep". The innuendo counsel would draw from this statement is that Mr. Evjen was either referring to the defendant or defendant's co-counsel, Harold E. Whitney, and that it was done for the purpose of discrediting the defendant and to prejudice him. The State maintains that it was all a joke and had nothing to do with the case on trial. The incident was used as the basis for a motion to declare a mistrial. The learned trial court apparently thought it was of so little moment that no investigation was made or hearing had thereon before an order was entered denying same. This ruling is assigned as error.

█ Defendant insists that the court should at least have investigated the occurrence and a failure to do so was a denial of his guaranteed rights. However the record shows that no hearing thereon was requested by counsel, nor did he request the court to admonish the jury to disregard the remarks, if heard by them. Furthermore there is no evidence, other than counsel's bald statement, that any juror heard the remark. The rule is well settled in this jurisdiction that prejudice will not be presumed, but must appear affirmatively from the record. State v. Martinez, supra. Certainly the trial court, knowing all of the parties, was in a better position to appraise the situation than is this court

from the reading of the cold record. It appears to be "much ado about nothing". We hold there is no merit to the assignment.

The defendant having been accorded a fair trial, the judgment is affirmed.

LA PRADE, C. J., and UDALL, WINDES and PHELPS, JJ., concurring.

STRUCKMEYER, J., having announced his disqualification, the Honorable NICHOLAS UDALL, a superior court judge of Maricopa County, was called to sit in his stead.