400 P.2d 332

**The STATE of Arizona, Appellee,**

**v.**

**Roy Eugene HOWARD, Appellant.**

**No. 1332.**

Supreme Court of Arizona.

En Banc.

March 25, 1965.

Rehearing Denied April 20, 1965.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, former Atty. Gen., Stirley Newell, former Asst. Atty. Gen., for appellee.

John J. Murphy, Phoenix, for appellant.

STRUCKMEYER, Vice Chief Justice.

Appellant Roy Eugene Howard was tried and convicted on three counts of violation of A.R.S. § 13–652, lewd and lascivious acts. From the judgment and sentence thereon, he appeals.

The evidence for the State tended to show that on the dates specified in the information, appellant and a young girl, age

12, herein called the complaining witness, committed certain acts of fellatio and cunnilingus. It is appellant's position that the trial court erred in denying his motion for a directed verdict of not guilty in that the complaining witness was an accomplice and as such her testimony must be corroborated.

By statute:

"A conviction shall not be had on the testimony of an accomplice unless the accomplice is corroborated by other evidence which, in itself and without aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." A.R.S. § 13–136.

Of this statute, we said, in State v. Thomas, that:

"The test of whether or not one is an accomplice is whether he could be informed against for the same crime of which the defendant is accused." State v. Thomas, 79 Ariz. 355, 358, 290 P.2d 470, 472.

In the past this Court has held that both parties who voluntarily participate in unnatural sex acts are accomplices and can be charged as principals. State v. Sheldon, 91 Ariz. 73, 369 P.2d 917; State v. McDaniel, 80 Ariz. 381, 298 P.2d 798.

However, the State urges that the complaining witness is a child without knowledge of the wrongfulness of the acts and incapable of committing the offenses under the Arizona statute, which provides:

"All persons are capable of committing crimes except:

"1. Children under the age of fourteen, in the absence of clear proof that at the time of committing the act charged against them they knew its wrongfulness." A.R.S. § 13–135.

We of the majority believe the clear proof from the testimony of the complaining witness establishes that she knew of the wrongfulness of the acts.

"Q * * * after any of these times that you had these things happen to you why didn't you tell your mother what had happened?

"A Because I was frightened.

"Q Did Roy ever say anything to you—you know—about talking to anybody about what happened?

"A He said that if I told anybody that both of us would get in trouble.

"Q You say you were frightened if you talked, is that right?

"A Yes.

"Q What were you afraid of, * * ?

"A I was afraid I might get in trouble, too.

"Q What sort of trouble were you afraid of, * * * ?

"A I don't know.

"Q Trouble from whom?

"A From the police.

\* \* \* \* \* \*

"Q * * * when this first started you were six, is that right?

"A Yes.

"Q And you are now twelve?

"A I am twelve.

"Q That is six years that this was going on, and you didn't say anything to anyone?

"A No.

"Q Why not?

"A I was scared.

"Q Scared of what?

"A I might get in trouble.

"Q Well, can you tell us how you thought you might get in trouble?

"A By the police.

"Q Well, did you think somebody was going to tell the police on you?

"A No.

"Q Were you afraid you would be arrested?

"A No.

"Q Then what were you afraid of?

"A I was just afraid.

"Q All right. And when you finally two or three months ago told your mother about it, why did you tell her then?

"A Because Roy wasn't there, and then she said, she said that—

"Q Don't tell us what she said.

"A Well, I just broke down and told her.

"Q Because Roy wasn't there?

"A Yes.

"Q Where was Roy?

"A He was—I don't know. We didn't know then."

The complaining witness testified that she was afraid she would get in trouble if she told anyone about the occurrences and that this trouble would be from the police. Normally, intelligent twelve-year-old children are aware that the police exist for the purpose of suppression of crimes and to arrest and see that those who have committed wrongs are punished. We think it too plain for cavil that the complaining witness knew her participation in the acts charged was wrongful. That children of her tender age are not ordinarily prosecuted in the criminal courts in our society today does not detract from the fact that she could have been accused of the same offenses for which appellant was charged. She was, therefore, an accomplice under the Arizona statute.

■ Since no conviction may be had upon uncorroborated testimony of an accomplice, the court erred in failing to grant appellant's motions for directed verdicts on Counts I and III, those assertedly committed on the 15th day of May, 1962, and the 14th day of July, 1962. The information is ordered dismissed as to these two counts.

■ The situation, however, is different as to the second count of the information. There the testimony of Betty Belle Howard, former wife of appellant, concerning his statements of an injury to his private parts could have been found by the jury, under appropriate instructions, as tending to corroborate the testimony of the complaining witness. Where there is independent evidence which tends to link an accused with the commission of the offense, the requirements of the statute are fulfilled. State v. Sheldon, supra.

■ This brings us to appellant's assignment that the court erred in failing to instruct the jury as to the necessity for corroboration of the testimony of the complaining witness as an accomplice. It is the announced rule in Arizona that only where the evidence is clear and undisputed that a witness is not an accomplice is it proper for the court to fail to submit the question of whether the testimony of the accomplice has been corroborated. State v. Gutierrez, 81 Ariz. 377, 306 P.2d 634.

■ In the instant case, the court below failed to submit any instruction whatsoever concerning the necessity for corroboration of the testimony of the complaining witness. In State v. Betts, 71 Ariz. 362, 227 P.2d 749, we approved this statement taken from People v. Curran, 24 Cal.App.2d 673, 75 P.2d 1090:

> " ' * * * The failure to so instruct the jury constitutes reversible error. Although it is not the duty of the court to give instructions to the jury upon specific points developed by the evidence unless such instructions are requested, it is nevertheless the duty of the court in criminal actions to give to the jury instructions on the general principles of law pertaining to the case on trial. * * * ' " State v. Betts, 71 Ariz. 362, 371, 227 P.2d 749, 755.

Failure to instruct the jury on the applicable principles of law concerning the necessity for corroboration of the testimony of the accomplice even though not requested is reversible error, People v. Dobkin, 74 Cal.App.2d 269, 168 P.2d 729, and requires that the conviction on the second count of the information be set aside.

We do not consider the appellant's further assignments as of such a nature as will likely occur on a retrial and therefore do not feel that it is necessary to pass upon them. The judgment of the court below is reversed with directions to dismiss the first and third counts of the information

and to grant appellant's motion for a new trial on the second count.

Reversed with directions.

LOCKWOOD, C. J., and BERNSTEIN, J., concur.

RICHARD N. ROYLSTON, Superior Court Judge (dissenting):

I dissent. I do not believe the child knew the wrongfulness of the acts; certainly there is no "clear proof", as required by statute, that she knew the acts were wrongful.

The majority feels that clear proof of the knowledge of the wrongfulness of the acts is established by the child's testimony that she feared she would get in trouble with the police if she told anyone. Even this knowledge was limited, as shown by the evidence, since she did not know what sort of trouble she would have with the police, nor did she fear arrest.

The problem of determining whether a child knows an act is wrong is a broad problem. It is much too complex to be solved by answering the question of whether the child feared trouble from the police.

It is proper to consider several questions in determining whether a child knows the wrongfulness of an act constituting a crime. Does the child understand the nature and effect of the act? Does the child know that the act is forbidden? Does the child know that if he or she commits the act he or she will be punished, either legally or morally, or both? And from these questions, and other questions that are raised by any particular facts of the case, it must be determined whether the child knew the wrongfulness of the act, keeping in mind that the law requires clear proof. If the proof is such that reasonable persons would agree that it fails to clearly show knowledge of wrongfulness, then the trial judge has the duty of ruling on the question as a matter of law; if reasonable persons could differ as to the clarity of proof of knowledge of wrongfulness, then it becomes a matter for the jury to decide in their deliberations.

The quoted testimony does not show that the child understood either the nature or the effect of the act. It does not show in any manner that the child understood the moral quality of the act, or that the child knows the act is forbidden or that she would be punished if she commits the act. The only fact the testimony affirmatively shows is that she was scared of trouble from the police.

One of the important factors in the testimony, which bears on the question of whether the child knew of the wrongfulness of the act, is the fact that the appellant had induced the child to perform such acts since the child was six years of age. The transcript shows that the child lived in the same house as appellant. Under

such continuing influence, it would be very difficult for any child, by the time it was twelve years of age, to learn or understand the nature and effect and moral qualities of the act.

The evidence further shows that the child's mother had complained to police officers many times that the appellant had struck and kicked the child's mother; that on such occasions the child had heard her mother "yelling" and had seen the marks and bruises on the mother's face and body; that the child had seen the appellant, while he was drunk, break down the doors and break out the windows of the house where they lived; that because of the appellant's cruelty to the child's mother, he had been arrested four or five times. Living in such a fear-provoking environment, it is likely that the child never questioned herself or anyone else concerning the wrongfulness of the acts.

Two factors should be pointed out in connection with the statement by the majority, that "Normally, intelligent twelve-year-old children are aware that the police exist for the purpose of suppression of crime and to arrest and see that those who have committed wrongs are punished." First, the factors in this case do not create a normal situation. Second, there is nothing in the record from which we are able to determine the intelligence of this twelve-year-old child. The trial judge was in a far better position to determine her intelligence. He had the advantage of hearing her testify, to note her demeanor and manner while in court, and to note the ease or difficulty with which she could form thoughts. These qualities do not appear in a printed transcript.

I feel that the evidence, viewed in a reasonable light, shows that the girl did not know the wrongfulness of the acts. I feel that no reasonable person could say that the above constitutes clear proof that she knew its wrongfulness. Therefore we should hold that this girl was not capable of committing the crimes at the time of the commission of the offenses with which appellant was charged, and that she could not have been an accomplice. The trial court was correct in refusing to direct a verdict in favor of the appellant, in refusing to give an instruction as to the necessity for corroboration, and in instructing the jury that there need not be any corroborating evidence.[1]

---

1. That part of the trial court's instruction herein referred to is as follows:

    "You are further instructed that it is not essential to a conviction in this case that the testimony of (name deleted) be corroborated by other evidence provided that from all the evidence you are convinced beyond a reasonable doubt and to a moral certainty of the defendant's guilt.

    "However, a charge such as that made against the defendant in this case is one which, generally speaking, is usually made and once made difficult to disprove, even if the defendant is innocent.

I feel the trial court should be affirmed as to all three counts.

UDALL, Justice (dissenting):

I specially concur in Judge Roylston's dissent from the decision of the majority in the above entitled and numbered cause.

The majority bases its opinion on a faulty premise that this 12 year old girl is a normal, intelligent child. To say that she is normal and intelligent completely ignores the record in this case. From the time she first entered school as a six year old child, until her twelfth year when the defendant was arrested, she had been sexually molested by the defendant and had been continually subjected to unnatural sex acts, namely, fellatio and cunnilingus, imposed upon her by her stepfather, the defendant. She had constantly been under the domination of this depraved, drunken, violent man and she had witnessed all of the cruelty that had been imposed upon her nearly deaf mother, by the defendant, as is described in Judge Roylston's dissent.

The treatment this child had received since she was six years of age had been, rather than normal, about as abnormal as can be imagined. You would look in vain to find another child in the entire state that has been subjected to such indignities and bestialities.

It is difficult to judge from the record whether the child is intelligent; perhaps it would take an expert in child psychology to determine what would happen to the intellect of a growing child with a background such as is recorded in this case. Of one thing we can be sure: that a child reared in the environment described in this case would not have the same clear mind with which to reach logical conclusions on moral and ethical problems as would be expected of a child reared in a good, wholesome home. It would be reasonable to assume, taking into consideration her background, that her thinking would be distorted and twisted compared to a girl reared in an average home environment.

In my opinion the majority likewise is in error when they assume that this 12 year old child "[is] aware that the police exist for the purpose of [suppressing crimes] and to arrest and see that those who have committed wrongs are punished." So far as this record is concerned, the only experience the child had with the police was when the police came to investigate and

---

"From the nature of a case such as this, the child and the person accused usually are the only witnesses.

"Therefore, I charge you that the law requires that you examine the testimony of the child who is the prosecuting witness with caution.

"In giving these instructions, I do not mean to imply an opinion of my own as to the credibility of any witness.

"The fact that the charge here made is one difficult to disprove should not deter you from rendering a verdict of guilty if you are convinced beyond a reasonable doubt that the defendant is guilty as charged."

arrest the defendant for his violent acts committed on the person of her mother. The defendant admits that he was arrested five times within the two-year period before he was charged with this crime. It is evident that he was not convicted of any offense, since he continued to live with the family and impose himself upon them. This child had observed the futility of the complaints made by her mother to the police department for protection and help. Somewhere in the midst of these arrests the defendant had told the child, "that if I told anybody, that both of us would get in trouble." In light of the circumstances of this case, this statement amounted to a threat on the part of the defendant, and to prove to the child that his rule was supreme he admitted that he had whipped the girl three times in order to discipline her.

As an abstract proposition it can be agreed that the police do exist for the purpose of suppressing crime, but the cold facts as this child understood them were that the crimes inflicted on her mother had not been suppressed and the only thing she knew was to endure the indecent and cruel acts of her stepfather, since there seemed to be no means of escape. It must have seemed to her that the defendant could intimidate and threaten her, whip her, and could beat and abuse her mother at will and at any time he wishes, without hindrance.

In view of the child's background I have found it impossible to conclude that she was a normal child or that she had the intelligence or training to form a basis for knowing what was right or wrong, and—as she testified—she never had the courage to tell her mother until, as she expressed it:

A "Well, I just broke down and told her [her mother].

Q "Because Roy was not there?

A "Yes."

In my opinion, the record clearly does not show that the 12 year old victim here was an accomplice to the acts upon which the defendant was convicted below.

In Dutzler v. State, 41 Ariz. 436, 19 P.2d 326 (1933) we held that a boy under 14 years old was not an accomplice within the rule requiring corroboration of an accomplice's testimony against an accused. It should also be noted that both A.R.S. §§ 13–135 and 13–136 (1956) were adopted from California. An examination of the judicial opinions of that state regarding these statutes in regard to crimes similar to the ones at bar reveal almost without exception that children under 14 years are not accomplices whose testimony need be corroborated. See, e. g., People v. Terry, 180 Cal.App.2d 48, 4 Cal.Rptr. 597 (1960); People v. Becker, 80 Cal.App.2d 691, 181 P.2d 958 (1947); People v. Slaughter, 45

Cal.App.2d 724, 115 ·P.2d 30 (Cal.App. 1941). In People v. Terry, supra, the court said:

"It is next claimed that the evidence was insufficient to support the conviction of violating Section 286; first because the boy involved was an accomplice and his testimony was uncorroborated, and second, there was no proof of penetration. It is settled, of course, that corroboration of the complaining witness is necessary (People v. Robbins, 171 Cal. 466, 472, 154 P. 317) unless he was not an accomplice. Timothy, the minor in question, was eleven years of age at the time of the act. By Section 26 of the Penal Code it is provided that all persons are capable of committing crime except (among others) 'children under the age of fourteen, in the absence of clear proof that at the time of committing the act charged against them, they knew its wrongfulness.' Analyzing this requirement, it was stated in People v. Becker, 140 Cal.App. 162, 164, 35 P.2d 196, 197, after reference to Section 26: 'No case has been brought to our attention in which a child of 11 years has been held to be an accomplice in the commission of such an offense (Section 286, Penal Code). It is doubtful whether it could be said in any case that a child of tender years could so far understand the nature and effect of acts such as those charged against appellant here as to know of their wrongfulness.' In People v. Williams, 12 Cal.App.2d 207, 209–210, 55 P.2d 223, the court declared that proof that the child understood the wrongfulness of the act must be clear and convincing." 4 Cal.Rptr. at 604.

For the foregoing reasons, I would affirm the lower court judgment.