501 P.2d 957

**STATE of Arizona, Appellee,**

v.

**Arthur RICHARDSON, Appellant.**

**No. I CA–CR 420.**

Court of Appeals of Arizona,
Division 1,
Department A.

Oct. 17, 1972.

———◆———

Gary K. Nelson, Atty. Gen., by John J. Dickinson, Sp. Asst. Atty. Gen., Phoenix, for appellee.

Cohen, Gerst, Groseclose & Meissner, by Stephen A. Gerst, Phoenix, for appellant.

DONOFRIO, Judge.

This appeal is from a jury conviction of the crime of Lewd and Lascivious Acts (A.R.S. § 13–652, as amended) and Aggravated Assault (A.R.S. §§ 13–241 and 13–245, subsec. A, par. 3, as amended) respectively, and the judgment and sentence thereon of not less than one nor more than five years in the Arizona State Prison on each charge, to run concurrently.

Two young unmarried students, who at times will be referred to as "the hitchhikers" or as "the complaining witness and her boyfriend", were attending the University of Oklahoma and during their semester break in January 1970 they decided to hitchhike to California. They got a ride to Phoenix and from there visited some friends. About 2:30 in the afternoon of January 27, 1970 they were hitchhiking in the vicinity of Grand Avenue east of Peoria, displaying a sign they had improvised bearing the words "Los Angeles". The defendant stopped his car and picked them up. He had a Mexican couple with him at the time whom he later let out of the car. After letting them out, defendant proceeded to drive on some roads unfamiliar to the hitchhikers. The hitchhikers thereupon requested him to take them back to the highway going to Los Angeles. He said he would, but instead he ended up taking them out to a desert road. The road had a gate across it which the boyfriend got out and opened. Soon after they went through the gate the complaining witness and her boyfriend asked

**330**

defendant to turn around as they were not going in the right direction to the highway. Defendant then turned around and again approached the gate whereupon the boyfriend got out to open the gate so they could go through. While he was out of the car opening the gate, defendant drove off with the complaining witness, leaving the boyfriend behind. She struggled with defendant in the car until she finally grabbed the car keys and threw them out the window. When the boyfriend caught up with the car the defendant, a 28-year-old who was approximately 5′ 10″ tall and weighed 170 pounds, had the complaining witness in a stranglehold with his arm. He warned the 5′ 7″ boyfriend to stay away or he would break her neck. Defendant, while maintaining a stranglehold on the complaining witness, walked and dragged her around the area looking for the keys. The complaining witness and her boyfriend first tried to talk the defendant into letting them go, then they began begging him to let them go, all without success. At one time defendant took her to the side of the road and implied "that he wanted to get his". In answer to a question of what defendant had said, her testimony was that "he wanted his satisfaction and he wanted me—he was going to get it". At this point in the sequence of facts we set forth the answer complaining witness gave which is pertinent to the accomplice issue which will be treated later:

"A He said he wanted to make a deal and I said, 'No deals.' He said he would have to do it by force, and at this time he put me in the car, not forcibly, I stepped in myself, in the back seat of the car, and he pulled his pants down."

She testified that he forced her to masturbate him for two or three minutes and that he then said he was not getting satisfied and needed the warmth of her body, then as defendant said this the boyfriend who was standing in front of the car went over to open the door and pull her out. Defendant then jumped the boyfriend, threw him

down on the ground and was holding his head. Her testimony at this point reads:

"Q Did Mr. Richardson say anything at this time?

"A Not at this time. I lifted a log to hit him and he looked up at me and said, 'Hit me, go ahead,' and I couldn't.

"Q What happened then?

"A And he said, 'I'll give you kids one more chance and if you don't cooperate I'm going to have to kill you.' He said he had a gun, he said he had a .38.

"Q Okay. What happened at this time?

"A He let John up at that time and John pulled his little pocket knife and started to hit Arthur with the pocket knife but it came back and slit his own finger but Mr. Richardson started running out to the desert and John chased him out a couple of hundred feet and then came running back to get me and we ran in the opposite direction.

"Q How far did you run?

"A Oh, we ran for a couple of miles and Mr. Richardson got in his car and took off."

After running some distance, the couple finally got to a place where they called the authorities. At about the same time, a car answering the description they had given to the sheriff's office was reported as being involved in an accident. The young couple were taken to the scene of the accident and identified the car. The "Los Angeles" sign was found at the scene of the accident. Defendant was later identified in a lineup at the sheriff's office. The charges were then lodged against him. At the trial defendant denied ever picking the young couple up.

Defendant raises two questions in this appeal. In one he urges the Court erred in not giving a jury instruction to the effect that the testimony of an accomplice must be corroborated. A.R.S. § 13–136. The law is well settled that parties

who voluntarily participate in unnatural sex acts are accomplices. State v. Sheldon, 91 Ariz. 73, 369 P.2d 917 (1962); State v. McDaniel, 80 Ariz. 381, 298 P.2d 798 (1956). We would agree in this case that if the complaining witness of her own volition participated in the unnatural sex act testified to, she would in law be an accomplice whose testimony must be corroborated. State v. Howard, 97 Ariz. 339, 400 P.2d 332 (1965). We find, however, that the facts are clear and undisputed that neither the complaining witness nor her boyfriend were accomplices.

The evidence is uncontradicted that defendant forced the complaining witness to masturbate him. As to the boyfriend, he was standing in front of the car while the masturbation was taking place and then when he realized it was taking place he undertook to stop it. There is no evidence that he aided or abetted in any manner. At all times when defendant was demanding his "kicks" (a term defendant used to express what he wanted), they were trying to talk him out of it.

Defendant contends that the complaining witness voluntarily stepped into the car and that this act made her an accomplice. We cannot agree. Her testimony that she got into the car with defendant merely to talk to him was unshaken by cross-examination. The defendant took the stand and denied ever picking up the complaining witness and her boyfriend, consequently there was no evidence from him as to what occurred.

The record is clear in showing that defendant was demanding to have sexual intercourse with the complaining witness. Failing in this, he was determined that he was going to get his "kicks" from her. In the car he exposed his privates and with his hand grabbing hold of hers, he forced the act of masturbation. The evidence also supports the conclusion that any assent to the act by the complaining witness was the result of fear and duress. Under the facts and circumstances of this case complainant could not have been informed against for the same crime of which de-

fendant is accused, which is the test in determining an accomplice. State v. Thomas, 79 Ariz. 355, 358, 290 P.2d 470, 472; State v. Howard, supra.

Where the facts with respect to the participation of a witness in a crime for which the defendant is on trial are clear and undisputed, it is for the court to determine whether the witness is an accomplice. Cruz v. State, 40 Ariz. 436, 14 P.2d 247 (1932); State v. Gutierrez, 81 Ariz. 377, 306 P.2d 634 (1957). We find no error in the trial court's failure to give the instruction.

■ Defendant next urges that the court erred in not granting a mistrial when Officer Fiore testified regarding the identification of the defendant by the complaining witness at the lineup. We set forth the pertinent testimony upon which this contention is based, placing emphasis on the offending part:

"Q Did you hold the line-up that you mentioned to Mr. Richardson?"

"A Yes, I did.

"Q As a result of the line-up did you take any action?

"A As a result, yes, sir, I did.

"Q What was that?

"A *Both of the victims identified the suspect,* and I went downstairs and placed him under arrest."

We do not believe the trial court abused its discretion in denying the motion for a mistrial. Assuming, for the sake of argument, that the answer given was improper, the error is harmless. Both victims identified the defendant in court; they identified his car where he wrecked it soon after the crime; they identified a sign with the words "Los Angeles" on it that was found at the spot of the accident; and the defendant was impeached by an Officer Miller who obtained a statement from defendant on the day of the accident that he had picked up two hitchhikers. There was considerable evidence identifying defendant before the offending answer was given and there was other evidence supporting his identification apart from the lineup.

We have reviewed the entire record and find no prejudicial error and that the defendant has received a fair trial.

Affirmed.

STEVENS, P. J., and CASE, J., concur.