547 P.2d 6

**STATE of Arizona, Appellant,**

v.

**Mearion Ray BATEMAN, Appellee.**

**STATE of Arizona, Appellee,**

v.

**Willie Edward CALLAWAY, Appellant.**

**Nos. 3360–PR, 3392–PR.**

Supreme Court of Arizona,
En Banc.

March 10, 1976.
Rehearing Denied April 13, 1976.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III and Shirley H. Frondorf, Asst. Attys. Gen., Phoenix, Charles Anthony Shaw, Prescott, for appellee.

John M. Neis, Pima County Public Defender by Kenneth J. Peasley, Asst. Public Defender, Tucson, Charles Preimsberg, Yavapai County Atty., by Richard A. Stewart, Deputy County Atty., Prescott, for appellant.

HAYS, Justice.

We accepted the petitions for review in these cases to determine whether ARS § 13–651 and § 13–652 proscribing sodomy and lewd and lascivious acts are constitutional. The acts complained of took place between two married individuals in one case, State v. Bateman, and between two individuals, one married but not to the other, single person, in the second case, State v. Callaway. Mearion Ray Bateman and Willie Edward Callaway were each convicted of one count of sodomy and one count of lewd and lascivious acts. Bateman renewed a prior motion to dismiss, arguing that the statutes were unconstitutional, and this motion was granted. The State appealed in that case, and the defendant appealed in the other case. The Court of Appeals affirmed the trial judge's order dismissing the case against Bateman and reversed the conviction of Callaway. State v. Bateman, 25 Ariz.App. 1, 540 P.2d 732 (1975); State v. Callaway, 25 Ariz.App. 267, 542 P.2d 1147 (1975). The opinions of the Court of Appeals are vacated. We consolidated the petitions for purposes of deciding these issues.

## I. STANDING

■ The first issue is the standing of Bateman and Callaway, hereinafter referred to as the defendants, to challenge these statutes as unconstitutional. The jury in the case against Bateman was instructed that consent is a defense to the acts alleged. The jury in Callaway was not. In both cases, the question of consent of the other person was raised and was a valid issue from the records before us.

If the defendants are not given the standing to raise the question of the constitutionality of these statutes as they pertain to consenting adults, they would be prohibited from raising consent as a defense to their alleged criminal activities. This is unlike the situation of a defendant asserting the rights of a purely hypothetical third party to invalidate an entire statute correctly applied as to him. *United States v. Raines,* 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed. 2d 524 (1960). This is more in accord with an exception to the *Raines* doctrine that the individual may assert a right that cannot otherwise be raised and protected. *United States v. Brewer,* 363 F.Supp. 606 (M.D.Pa.1973), *aff'd,* 491 F.2d 751. Bateman and Callaway have standing to raise the issues presented in this case.

## II. FREEDOM OF EXPRESSION

■ One of the contentions raised is that the statutes violate the constitutional right of freedom of expression established by the First Amendment. We have been cited to no case and have ourselves found none to establish that the sexual behavior of the kind alleged is within the ambit of the First Amendment. To the contrary are *United States v. A Motion Picture Film,* 404 F.2d 196 (2d Cir. 1968), and *Raphael v. Hogan,* 305 F.Supp. 749 (S.D.N.Y.1969), in which cases conduct was combined with speech more possibly connected with the protection accorded by the amendment. This is not a situation in which the statutes threaten a fundamental right. *Rose v. Locke,* 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed. 2d 185 (1975).

## III. VOID FOR VAGUENESS

■ No one is required at the risk of his liberty to speculate as to the meaning of penal statutes. *Lanzetta v. New Jersey,* 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939). An offense must be defined in terms that men of average intelligence understand. *Lovelace v. Clark,* 83 Ariz. 27, 315 P.2d 876 (1957). The defendants attack ARS § 13–651 and § 13–652 as contrary to this principle.

■ The Due Process Clause requires only that the law give sufficient

warning that men may conform their conduct to its dictates. *Rose v. Locke, supra.* The term "crime against nature" has been in use for centuries *See* 4 Blackstone, Commentaries 215–216. It is no more vague than many other terms used to define criminal conduct and it is, in fact, used in a substantial number of jurisdictions. *Rose v. Locke, supra.* That term and the term "lewd and lascivious acts" have been often defined by this court. *State v. Mortimer,* 105 Ariz. 472, 467 P.2d 60 (1970); *State v. Wayman,* 104 Ariz. 125, 449 P.2d 296 (1969); *State v. Alkhowarizmi,* 101 Ariz. 514, 421 P.2d 871 (1966); *Lovelace v. Clark, supra; State v. Potts,* 75 Ariz. 211, 254 P.2d 1023 (1953); *Faber v. State,* 62 Ariz. 16, 152 P.2d 671 (1944); *State v. Farmer,* 61 Ariz. 266, 148 P.2d 1002 (1944); *State v. Poole,* 59 Ariz. 44, 122 P.2d 415 (1942); *Weaver v. Territory of Arizona,* 14 Ariz. 268, 127 P. 724 (1912). When a statute has been interpreted in terms of identifiable conduct, meaning has been added to the statute and claims of vagueness will be judged in that light. *Wainwright v. Stone,* 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973). Previous applications of a statute to a set of facts precludes a constitutional attack on the basis of vagueness. *Wainwright v. Stone, supra.* It can be easily determined what constitutes lewd and lascivious activity and sodomy in this state. *See Rose v. Locke, supra.* The challenge to the statutes on this basis is without merit.

## IV. RIGHT TO PRIVACY

■ Justice Harlan wrote a well-reasoned dissent in *Poe v. Ullman,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), which set forth the right to privacy and which was followed by the majority of the court in *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). These cases concerned the distribution of contraceptive devices for the use of married couples. In *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), the right of privacy of *Griswold* was established as the right of the individual, single or married. The right exists within the context of the intimate sexual relations between consenting adults in private, *Eisenstadt v. Baird, supra; Griswold v. Conn., supra;* child-bearing, *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed. 2d 147 (1973); *Eisenstadt v. Baird, supra; Griswold v. Conn., supra;* child-rearing, *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925).

## V. VOID FOR OVERBREADTH

■ The Arizona statutes are attacked as reaching both married and unmarried persons, and both consenting and nonconsenting adults. The former has been discussed above, and, true, the latter distinction does not appear facially from the statutes. However, statutes do not stand alone. Judicial interpretation adds meaning to a statute as certainly as if the words were placed there by the legislature. *Wainwright v. Stone, supra.*

■■ The United States Supreme Court is the ultimate authority interpreting the United States Constitution. Judiciary Act of 1789, 1 Stats. at L. 73. Its opinions on that subject are binding. *Martin v. Hunter's Lessee,* 1 Wheat. 304, 4 L.Ed. 97 (U.S.1816). While it has said in *Griswold* and *Eisenstadt* that the State cannot interfere with the private sexual behavior of two adults, in neither of those opinions did it determine that the State could not regulate sexual misconduct. In fact, the contrary was noted by Justice Goldberg in his concurring opinion in *Griswold. See also Poe v. Ullman, supra* (dissent of Justice Harlan). The Arizona statutes may thus be properly construed to prohibit nonconsensual sexual conduct and remain constitutional. *Hughes v. State,* 14 Md. App. 497, 287 A.2d 299 (1972), *cert. denied,* 409 U.S. 1025, 93 S.Ct. 469, 34 L.Ed.2d 317. Certainly the State retains a compelling interest in protecting its citizens from violence even if the combatants are married to one another.

■ The State may also regulate other sexual misconduct in its rightful con-

cern for the moral welfare of its people. *See Poe v. Ullman, supra* (dissent of Justice Harlan). The right of privacy is not unqualified and absolute and must be considered in the light of important state interests. *Roe v. Wade, supra.*

Sodomy has been considered wrong since early times in our civilization. Deuteronomy 23:17, Leviticus 18:22–23; 4 Blackstone, Commentaries 215; 2 Pollock & Maitland, The History of English Law 556. The lewd and lascivious acts prohibited in this state have also been traditionally prohibited. The legislature has thus made certain sexual behavior criminal by its power to regulate the health, morals and welfare of its people. This type of activity has not been discussed by the United States Supreme Court. We therefore hold that sexual activity between two consenting adults in private is not a matter of concern for the State except insofar as the legislature has acted to properly regulate the moral welfare of its people, and has specifically prohibited sodomy and other specified lewd and lascivious acts. While we are very well aware that some of the acts complained of are not universally condemned, we are equally cognizant of our role as the judicial branch of government and not the legislative.

Whatever our personal predilections in the area of sex may be, this is not the time to voice them, for the public policy of the State in this and other areas of concern is articulated by the legislature. *State v. Mortimer, supra.*

## VI. ACCOMPLICE INSTRUCTION

ARS § 13–136 provides that a conviction will not be had on the testimony of an accomplice unless that testimony is corroborated by other evidence connecting the defendant with the commission of the offense. An accomplice is one who could be indicted or informed against for the same crime of which the defendant is accused. *State v. Thomas,* 79 Ariz. 355, 290 P.2d 470 (1955). Both persons who consensually participate in criminal sexual ac-

tivity are accomplices and can be charged as principals. *State v. McDaniel,* 80 Ariz. 381, 298 P.2d 798 (1956). The failure of the trial courts to instruct the juries on this issue was reversible error even in the absence of requests for such instructions. *State v. Betts,* 71 Ariz. 362, 227 P.2d 749 (1951). These were not cases where the evidence was so undisputed that the complaining witnesses were not accomplices that the errors can be ignored. If the complaining witness should be found by the jury to have in fact consented to the acts alleged, the witness' testimony must otherwise be corroborated to convict the defendant.

## VII. DISPOSITION OF BATEMAN

By finding Mearion Ray Bateman guilty after an instruction by the court on consent as a defense, the jury obviated the need for an accomplice instruction. Clearly, Mrs. Bateman did not consent and therefore could not have been an accomplice. The failure to give an accomplice instruction here is not prejudicial to defendant. The order of the trial court dismissing the cause of action is vacated; the court is ordered to enter a judgment of conviction, and the case is remanded for sentencing.

## VIII. DISPOSITION OF CALLAWAY

The judgment of guilt against Willie Edward Callaway is reversed and the case is remanded for a new trial.

CAMERON, C. J., and HOLOHAN, J., concur.

GORDON, Justice (dissenting):

The majority notes but fails to address itself to the overriding issue in these cases, the right to privacy. This is in sharp contrast to the thorough and well-documented discussions of this constitutional guarantee in the Court of Appeals' decisions. The manner in which the litigants' arguments are left out without any effort to refute

their reasoning highlights the failure to directly state the logical result of the holding,—that the police power of the state may legitimately intrude into the bedrooms of consenting heterosexual adults.

The United States Supreme Court has clearly stated that the fundamental right of privacy inheres in the individual citizens of this nation and the government must show a compelling state interest in order to regulate or prohibit conduct which infringes on this protection. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). This is especially true where conduct occurs within the privacy of one's home. Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969). I am baffled as to how the majority can acknowledge that "[t]he right [of privacy] exists within the contexts of the intimate sexual relations between consenting adults in private," whether single or married, and then can conclude that the Legislature may separate certain of these relations it finds distasteful, label them as misconduct and make the participants felons subject to a prison term of up to twenty years in the state penitentiary. By declining to afford

the protection of privacy to "activity [which] has not been discussed by the United States Supreme Court" the majority implies that sexual activity for purposes other than having children may be prohibited by the Legislature.

Apparently the majority would find the required "important state interests" in a case where the police, for example, acting on a reliable tip, break into a married couple's bedroom in the middle of the night and arrest them for engaging in the type of behavior referred to in the statutes, A.R.S. §§ 13-651 and 13-652. Without approving these types of sexual activities, I personally would find such a use of the government's police power to be repugnant to the modern notions of individual rights and privacy.

I would affirm the Court of Appeals' decisions in *State v. Bateman* and *State v. Callaway* as they both appear to be correct interpretations of the law as laid down by the United States Supreme Court in this area.

I must, therefore, respectfully dissent.

STRUCKMEYER, Vice Chief Justice (concurring):

I concur in Justice Gordon's dissent.