562 P.2d 738

STATE of Arizona, Appellee,

v.

Tom OWENS, Appellant.

No. 1 CA–CR 2017.

Court of Appeals of Arizona, Division 1, Department A.

Feb. 17, 1977.

Rehearing Denied March 23, 1977.

Review Denied April 12, 1977.

Harry J. Rubinoff, Asst. City Prosecutor, Phoenix, for appellee.

Kenneth J. Lincoln, Phoenix, for appellant.

**566**

OPINION

NELSON, Presiding Judge.

The appellant was charged in the City Court of Phoenix with wilfully and unlawfully maintaining "a non-permitted use in a residential zone to-wit: Outside storage of motor vehicles and junk, all in violation of Sections 409, 400 and 107B of the Code of the City of Phoenix."[1] *See* Ch. 4 and Ch. 1, City of Phoenix, Arizona Code, Appendix A.

Appellant was found guilty of the charge and was sentenced to pay a fine of $300.00 or to a jail sentence of 30 days. Appellant appealed his conviction to the Superior Court pursuant to A.R.S. § 22–371. The conviction was affirmed. Appellant has now appealed to this Court pursuant to A.R.S. § 22–375, which restricts our review to an examination of the validity of the subject ordinance. Appellant contends as he has in both courts below that the ordinance under which he was charged is void for uncertainty in that it fails to define and give notice as to what constitutes criminal conduct. Appellant also urges a companion contention that the ordinance unconstitutionally delegates to its enforcers the power to determine what is and what is not a violation of its terms without adequate standards or guidelines.

We note at the outset that there are basically two kinds of zoning ordinances, "inclusive" and "exclusive". 1 Yokley, *Zoning Law and Practice*, § 4–5 (Third Ed. 1965). An "inclusive" type of zoning ordinance specifies permitted uses and prohibits all other uses. The Phoenix zoning ordinance before us appears to be basically of this variety. An "exclusive" type zoning ordinance, on the other hand, specifically prohibits certain defined uses of property and permits all other uses. Some ordinances contain both types of provisions. 1 Yokley, *supra* § 4–5.

With this in mind, we examine the ordinance provisions that appellant was charged with violating.

Section 406 defines the R1–10 Residential District in which appellant's house is located. It states in part:

"Sec. 406. RESIDENTIAL R1–10 DISTRICT ONE FAMILY RESIDENCE

The R1–10, One Family Residence District, is a district of single family homes designed to maintain, protect and preserve a character of development on lots with a minimum area of 10,000 square feet and with not more than one dwelling unit and customary accessory buildings upon one lot.

Dwelling groups shall also be allowed in the district on certain lot [sic] of excessive size, when developed consistent with the character of adjacent residential uses in the district.

A. PERMITTED USES

1. Same as RE–24."

The permitted uses in the RE–24, One Family Residence District referred to above are found in Section 403. This section enumerates a variety of permitted uses, including, for example, churches, schools, parks, and foster homes. It describes the following additional permitted use at subsection A(8):

"8. Accessory uses and buildings. No accessory use shall be maintained in which there is solicitation of the recipient for a service or product, or the operation of the use so that it is commonly known as offering a commercial service or product."

Chapter II of the Zoning Ordinance contains the following definition of "accessory use":

"ACCESSORY USE: A subordinate use of a building, other structure, or use of land:

a. Which is clearly incidental to the use of the main building, other structure or use of land, and

b. Which is customary in connection with the main building, other structure, or use of land, and

1. The complaint originally alleged a violation of § 409; § 406 was later substituted for § 409 on motion of the City. Appellant was also charged with *conducting* (as opposed to main-

taining) a non-permitted (commercial) use in a residential zone. He was found not guilty of the latter charge.

c. Which is located on the same zoned lot with the main building, other structure, or use of land."

Section 400 of the ordinance reads in part as follows:

"Sec. 400. General Provisions

The use districts, regulations, and the uses that are permitted in these use districts are hereby established. Any use that is not specifically permitted or analogous to those specifically permitted is hereby declared to be a prohibited use and unlawful. A use that is not permitted in any district shall be considered an accessory use in that district."

Section 107(B) of the ordinance states that "[a]ny person who violates any provision of this ordinance shall be guilty of a misdemeanor" and specifies penalties to be imposed upon conviction. It further states that a violator shall be deemed guilty of a separate offense for every day a violation is permitted to exist.

We agree with the City that we may consider only the validity of the ordinance, and not the constitutionality of its application to appellant. *State v. Anderson*, 9 Ariz.App. 42, 449 P.2d 59 (1969). Appellant's assertion of unconstitutionality for vagueness is within the permitted scope of review. *State v. Jean*, 98 Ariz. 375, 405 P.2d 808 (1965).

In sustaining a variety of criminal enactments attacked as void for uncertainty or vagueness, courts have noted the inherent imprecision of language and the difficulty of defining criminal conduct in mathematically certain or axiomatic terms. *State v. Sanner Contracting Co.*, 109 Ariz. 522, 514 P.2d 443 (1973); *Johnson v. Phoenix City Court*, 24 Ariz.App. 63, 535 P.2d 1067 (1975); *State v. Cole*, 18 Ariz.App. 237, 501 P.2d 413 (1972). "Total precision of expression is elusive and has never been demanded of the legislature." *People v. Beaver*, 549 P.2d 1315, 1316–1317 (Colo.1976). In contrast to many cases, however, the present case appears to involve the purposeful use of general and flexible language.

The basic rule is that an offense must be defined in terms that persons of average intelligence can understand. *State v. Bateman*, 113 Ariz. 107, 547 P.2d 6 (1976). This is so that persons of ordinary intelligence may know what the law commands or forbids. *See Papachristou v. City of Jacksonville*, 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), and authorities cited therein. Appellee quotes the following proposition adopted in *City of Tucson v. Stewart*, 45 Ariz. 36, 58, 40 P.2d 72, 80 (1935):

"An ordinance of a regulatory nature must be clear, certain and definite, so that the average man may with due care after reading the same understand whether he will incur a penalty for his actions or not. Otherwise it is void for uncertainty."

The same test was quoted in *Thrift Hardware & Supply Co. v. City of Phoenix*, 71 Ariz. 21, 222 P.2d 994 (1950).

■ The crux of appellant's contention here is that in expressly permitting generally defined "accessory uses" of residential property while at the same time prohibiting all but certain other specified uses, the City compels its residents to guess at their criminal peril as to what might or might not be a permitted "accessory use". We believe that the contention has merit and that the necessarily indefinite concept of "accessory use" infects the validity of the zoning ordinance insofar (and only insofar) as violation of the ordinance is made the basis of criminal liability.

The term "accessory use" is commonly and aptly used in zoning ordinances because of its flexibility:

"The concept of accessory use relieves a municipality from attempting to enumerate in the statute every possible approved use, and allows courts to determine on a case by case basis whether permission for the proposed use has been impliedly granted. *See* E. Bassett, Zoning 100; 1 A. Rathkopf, The Law of Zoning and Planning Ch. 23 (3rd Ed.)." *City of Sheridan v. Keen*, 34 Colo.App. 228, 524 P.2d 1390, 1392 (1974).

As might be expected, the presently developed law relating to accessory uses of residential land reflects the diversity of the home-oriented activities of the American people. *See generally,* 3 Williams, *American Planning Law,* § 74.01 et seq. (1975), and in respect to a particular application in Arizona, *see Town of Paradise Valley v. Lindberg,* 27 Ariz.App. 70, 551 P.2d 60 (1976). As is stated in *Borough of Chatham v. Donaldson,* 69 N.J.Super. 277, 174 A.2d 213, 216 (1961):

"Use by a family of a home under our customs includes more than simple use of a house and grounds for food and shelter. It also includes its use for private religious, educational, cultural, and *recreational* advantages of the family. 1 Rathkopf, The Law of Zoning and Planning, (3rd ed. 1960), c. 23, pp. 56 and 57. Pursuit of a hobby is clearly customarily a part of recreational activities." (Emphasis in original).

A great deal of the pursuit of happiness necessarily revolves around the home, and the difficulty with the flexible and otherwise valuable concept of accessory use when it is necessarily incorporated into a criminal charge like the present one is that it requires residents, on pain of incurring criminal penalties, to make fine legalistic determinations as to whether their otherwise innocent conduct is "subordinate", "incidental", and "customary" to residential use of property. These are terms of legal significance, well known to lawyers and judges, the application of which in a specific case calls for a judicious balancing of the relevant operative factors.[2] Even if we focus upon the requirement that the accessory use be "customary", *see State v. Sanner Contracting Co., supra,* we find that the courts have generally avoided a literal interpretation of this requirement and have adopted a loose construction. 3 Williams, *American Planning Law, supra* at § 74.16. In the present case the requirement is virtually nullified by the provision permitting

"analogous" uses. § 400, *supra.* Taken as a whole, the ordinance with its express allowance of accessory uses does not meet the test of defining an offense in a manner understandable by the average man. It requires a resident to speculate as to whether his use of his property is in violation of the criminal law.

There is support for our conclusion in the case of *Wiley v. County of Hanover,* 209 Va. 153, 163 S.E.2d 160 (1968). There the appellant Wiley was charged with violating the county zoning ordinance by raising and harboring homing pigeons in a small building on his residential property. The county had an "inclusive" zoning ordinance which permitted "accessory buildings" and did not expressly prohibit the raising or harboring of pigeons or other fowl. The use of an accessory building under the ordinance had to be "customarily incidental" to the use of the main building, the dwelling.

On Wiley's appeal from conviction the Virginia Supreme Court first noted that there was a failure of proof by the county as to whether the use in question was customarily incidental. The court then went on to state:

"Moreover, [citations omitted] an act creating an offense, to be valid, must specify with reasonable certainty and definiteness the conduct which is commanded or prohibited, so that a person of ordinary intelligence may know what is thereby required of him. [Citations omitted]

"Clearly, the ordinance here fails to meet this elementary requirement. It is certainly doubtful, to say the least, whether a person of ordinary intelligence would know from the language of the ordinance whether the keeping of homing pigeons on his residential lot would be 'customarily incidental' to the use of his dwelling and therefore permitted, or whether such activity was prohibited." *Wiley v. County of Hanover, supra* at 163.

---

2. *See Borough of Chatham v. Donaldson, supra,* where the storage or parking of four old cars was held to be an accessory use.

We believe that this holding is sound and that it is logically applicable not only to an activity such as the keeping of pigeons but to the infinite variety of other uses that a residential landowner may make of his property. Looking to the charge in the present case, for example, which necessarily contains as a silent component an allegation that the use made by appellant of his land was not accessory, it could scarcely be contended that *some* outside storage could never be a permitted, accessory use.[3] As to old automobiles, *see Borough of Chatham v. Donaldson, supra.* The question then becomes the debatable one of how much outside storage of cars or other material, however characterized, can be deemed accessory to the residential use. When it is considered that zoning ordinances, being in derogation of common law property rights, will be construed in doubtful cases in favor of a property owner, *Phoenix City Council v. Canyon Ford, Inc.,* 12 Ariz.App. 595, 473 P.2d 797 (1970), the answer is at best highly uncertain. We note as did the Virginia court in *Wiley* that if the City wishes to limit or prohibit the outside storage of vehicles or other material, it is free to enact a specific ordinance to that effect.

The City has pointed to the definition of a "junkyard" in the ordinance. It reads as follows:

"JUNK YARD: The use of a lot or portion thereof for the storage, keeping or abandonment of junk, dismantled automobiles, or other vehicles, or machinery, or parts thereof, including scrap metals, rags, or other scrap materials."

This definition is included in the ordinance along with many other definitions such as "restaurant" and other commercial and industrial uses apparently in connection with the portions of the ordinance providing for districts for such uses ("junk dealers" and "yards" are confined to "A–2" or heavy industrial districts). The term "auto wrecking" is defined in the ordinance as "same as 'junkyard' ".

The appellant here was charged with and acquitted of *conducting* a non-permitted use; that charge is not before us. The charge which is before us is not the conducting or operation of a junkyard, as defined; it is *maintaining* a non-permitted, and necessarily non-accessory, use. The problem of defining what is and what is not an accessory use remains. § 400 of the ordinance itself appears to recognize this in its statement that "[a] use that is not permitted in any district shall be considered an accessory use in that district."

It bears emphasizing that nothing stated herein should be construed as indicating the invalidity of the Phoenix Zoning Ordinance as a whole or as otherwise applied. The only issue before this Court is the efficacy of the ordinance to charge a *criminal offense* when an essential component of the charge is that the landowner is not making an accessory use of his property. The presumption that the ordinance is valid in other respects remains. *City of Phoenix v. Fehlner,* 90 Ariz. 13, 363 P.2d 607 (1961). Nothing herein restricts the City from pursuing civil remedies against persons it believes are maintaining non-permitted uses.

It is unnecessary for us to consider appellant's alternative contention.

Appellant's conviction is accordingly reversed and the case is remanded with directions that the criminal complaint be dismissed.

HAIRE and DONOFRIO, JJ., concur.

---

3. Storage incidental to a construction project is expressly permitted. City of Phoenix, Arizona, Code, Appendix A, Ch. IV, § 403A.2.a. (1969).