**UNITED STATES, Appellee,**

v.

**Private First Class James E. JONES, Jr., SSN 488–70–7811, United States Army, Appellant.**

**CM 441983.**

U. S. Army Court of Military Review.

30 Nov. 1982.

Captain Peter R. Huntsman, JAGC, argued the cause for the appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, and Major Robert C. Rhodes, JAGC.

Captain Daniel N. Velling, JAGC, argued the cause for the appellee. With him on the brief were Colonel R.R. Boller, JAGC, Lieutenant Colonel John T. Edwards, JAGC, and Major Joseph A. Rehyansky, JAGC.

Before MILLER, KUCERA and BADAMI, Appellate Military Judges.

## OPINION OF THE COURT

KUCERA, Judge:

The appellant was charged with consensual sodomy and assault with intent to commit murder in violation of Articles 125 and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 925 and 934 (1976). At a general court-martial he was convicted of the sodomy and the lesser included offense of aggravated assault, a violation of Article 128, UCMJ, 10 U.S.C. § 928 (1976). He was given a sentence of a bad-conduct discharge, confinement at hard labor for 18 months, forfeiture of all pay and allowances, and reduction to the grade of Private E–1. At the time of the incident, the appellant, Private First Class Jones and the victim, Specialist Four Sandra P., were working as cooks in a military dining facility. They had known each other for about six months and Sandra P. was some four months pregnant with appellant's child. The principal issue raised on appeal concerns the constitutionality of Article 125, UCMJ, as it applies to consensual sodomy between adults of the opposite sex.[1]

On the evening of the night in question Sandra P. was watching TV in her barracks room when the appellant paid her a visit. They argued, he called her to bed, spread her legs apart and forced her "to have sex with him." When she started to cry, he began slapping her, putting his hand over her mouth and kept telling her to "shut up." At his command they had sex on the floor and once again on the bed. When Sandra was not "moving fast enough for him," he hit and dragged her around. The "sex" included "missionary, . . . and then he made me have oral sex with him, and he did it to me, both on the floor and the bed."[2] Appellant threatened to kill her if she bit his penis.

To keep Sandra from making noise, the appellant tried stuffing such things as a sock, towels and T-shirts in her mouth. Next, he turned her over and began to have anal sex with her. When she screamed he stopped and apologized. He then tried to tie one of her legs to a bed post with a sheet. When that did not work, he again put her on the floor, banging her head against it, and telling her to shut up. With her cook's apron strings, he then tied her hands behind her back and again had sex with her on the bed and on the floor. As if that was not enough, he poured a bottle of alcohol on a towel and twice put that over her mouth and nose trying to suffocate her but she wrestled herself away from him. Once again they had sex, after which he urinated all over her face. To finish up the evening, he took a butter knife and without breaking skin, pulled it over Sandra's neck. He then sharpened a paring knife, swallowed some white pills, and cut her throat.[3]

---

1. Article 125, Uniform Code of Military Justice, prohibits all sodomy, whether consensual or forcible, heterosexual or homosexual, public or private.

2. "[H]e put his mouth on my vagina and then he made me, you know, put my mouth on his penis, you know, . . . ."

3. "Q. Which hand was the [paring] knife in, do you recall?
   A. No, I don't, and then I saw him swallow some—a little bottle of some kind of white

pills. This was before he cut me, and then he went over to the—over me. I was laying down, my hands were tied then, and he had some kind of towel or something around my neck and that's when he cut me.
   \* \* \* \* \* \*
   A. I couldn't do nothing to get up because he had just cut my throat and I was tied up then, and he went over to my TV and got a German extension cord and pulled out the cord part of it and tied up my legs and grabbed his keys and said just wait here, I'm

The cut was some five inches long missing the jugular vein by a quarter to one-half of an inch.

At trial the appellant chose not to put on a defense; nor did he contest the constitutionality of Article 125, UCMJ. His civilian trial defense counsel did not object to the military judge instructing the members about the charge of consensual sodomy. In his closing argument, the trial defense counsel argued to the court members that:

> The law does not ask ... what your personal feelings are about oral sex. The military law is clear. Consensual sodomy between consenting adults, between consenting minors, between a man and a wife who are married, between a couple who are engaged, you all can be prosecuted for that.

The record of trial is devoid of any evidence, be it legal or demographic, bearing on the constitutionality of Article 125, UCMJ. Yet, the appellant now urges that: PRIVATE CONSENSUAL SODOMY BETWEEN ADULTS OF THE OPPOSITE SEX CANNOT BE A CRIMINAL OFFENSE, AS IT IS PROTECTED BY THE CONSTITUTIONAL RIGHT TO PRIVACY.

In his brief appellant: (1) cites and discusses Federal and State decisions and authorities supporting his position; (2) "submits that *the still developing right of privacy* protects the private, consensual acts of adults of the opposite sex, *even in the military environment*" (emphasis added); and (3) urges the sodomy Charge and its Specification be set aside and dismissed.

In *United States v. Scoby,* 5 M.J. 160 (C.M.A.1978), the Court of Military Appeals held "that Article 125, facially and as applied, does not trench upon the constitutional right of privacy by prohibiting *unnatural or deviant* sexual intercourse between adults in private." *Id* at 166 (emphasis added). In the case at bar to reach the *constitutionality of Article 125 via Scoby,* it must first be decided whether or not the oral sex of which the appellant was convict-

going to call an ambulance for you at the

ed is "unnatural or deviant." It has been so recognized historically, Leviticus 18:22–23, Deuteronomy 23:17; 4 Blackstone, *Commentaries* 215; 2 Pollock & Maitland, *The History of English Law* 556, as well as by the precedent of our own Courts. *See United States v. Dearman,* 7 M.J. 713 (A.C.M.R. 1979); *United States v. Rose,* 6 M.J. 754 (N.C.M.R.1978). The record of appellant's trial is devoid of any evidence upon which an opinion to the contrary could be reached.

The United States Supreme Court is the ultimate authority interpreting the Constitution of the United States, Judiciary Act of 1789, 1 Stat. at L. 73; and the opinions of the United States Supreme Court are binding on the military. *Ex parte Milligan,* 4 Wall. 2, 124–127, 18 L.Ed. 281 (U.S.1866); *Martin v. Hunter's Lessee,* 1 Wheat. 304, 4 L.Ed. 97 (U.S.1816). Applied to the case at bar, while the United States Supreme Court has said in *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) and *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), that the Government cannot interfere with the private sexual behavior of two adults, in neither of those opinions did it determine that the State could not regulate sexual misconduct. *See State v. Bateman,* 547 P.2d 6, 113 Ariz. 107 (1976). Although it had ample opportunity to do so, thus far the United States Supreme "Court has not definitely answered the difficult question whether and to what extent the Constitution prohibits state statutes regulating [private consensual sexual] behavior among adults . . . ." *Carey v. Population Services,* 431 U.S. 678, 688 at n. 5, 97 S.Ct. 2010, 2017 at n. 5, 52 L.Ed.2d 675 (1977).

In *Doe v. Commonwealth's Attorney for City of Richmond,* 403 F.Supp. 1199 (E.D. Va.1975) *aff'd mem.* 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976), petitioners attacked a Virginia sodomy statute as unconstitutional in its application to adult male consensual conduct. Concluding that there was no authoritative judicial bar to the

dispensary and he jumped out the window."

proscription of such conduct, the District Court stated, "If a State determines that punishment therefor, even when committed in the home, is appropriate in the promotion of morality and decency, it is not for the courts to say that the state is not free to do so." *Id.* 403 F.Supp. at 1202 (citations omitted). The Supreme Court affirmed this decision in a Memorandum Opinion. Insofar as a Memorandum Opinion is authority, it appears from our analysis of the Supreme Court cases that the right of privacy does not protect the sexual behavior of which appellant in the present case was convicted.

Until such time as the United States Supreme Court may decide that the criminal statutes regulating private consensual sexual behavior are unconstitutional or, the United States Congress decriminalizes such conduct currently proscribed by Article 125, UCMJ, this Court is bound to the precedent of *Scoby* that Article 125, UCMJ, does not trench upon the constitutional rights of privacy.

■ In regard to the assault conviction, appellate contends that the five photographs which show the wounds on the victim's neck should not have been admitted into evidence because they were inflammatory and gruesome. He also argues that, in any event, only one of the photographs should have been admitted and that the others were merely cumulative. This latter theory was never advanced at the trial and any error has been waived. *United States v. Salley,* 9 M.J. 189 (1980). We do not agree with his first theory. The admissibility of photographs at trial lies within the sound discretion of the military judge and will not be disturbed on appeal unless it is shown he clearly abused his discretion. *United States v. Montgomery,* 5 M.J. 832 (A.C.M.R.1978). We believe the photographs here were admissible to show the nature and extent of the wounds. The military judge did not abuse his discretion.

The remaining errors were considered and found similarly meritless.

The findings of guilty and the sentence are affirmed.

MILLER, Senior Judge, concurring in the result:

Appellant's attack on the constitutionality of Article 125, UCMJ, 10 U.S.C. § 925 as it pertains to consenting heterosexual adults fails for two reasons: First, the sodomy offense of which appellant stands convicted occurred between two service members in a military barracks room located on a military reservation in a foreign country. Any constitutionally protected right to privacy under these circumstances must, in my view, give way to the military's right—indeed obligation—to curb promiscuity and sexual misconduct among service members. In balancing these competing rights, the balance should be struck in favor of the needs of discipline in the military service.

Second, the questionable nature of the conduct as "consensual" would doubtless make more difficult an attempt by the military to intrude on the intimate sexual relations between consenting adults, carried out under secluded conditions. *See Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). However, in my view the Court need not reach the difficult determination of whether a compelling military interest underlies and justifies the application of the sodomy statute to this conduct. The relations in this case were not private and appellant has no right which he may assert. While the act complained of took place behind a closed door, this is not to say that the conduct was "private." This term has a more precise meaning in its constitutional context. The right to privacy extends to the performance of an act which is personal to the one performing it and has no meaningful effect on others. *Lovisi v. Slayton,* 363 F.Supp. 620, 625 (E.D.Va.1973).

The burden is on the appellant to show that privacy was not waived and that the act was within the secluded confines of the bed chamber. In my opinion, appellant by his outrageous conduct, which began with a sexual orgy including buggery, fellatio, bondage, sadism, and culminated in appel-

lant's inflicting a cut on his sexual partner's throat five inches long missing her jugular vein by a quarter to one-half inch, relinquished any right of privacy which may have existed. As a matter of course, appellant's conduct would become a matter of public knowledge during the course of the ensuing investigation. Appellant could not expect otherwise. As such, appellant relinquished his right to privacy in the performance of these acts and could lawfully be prosecuted.

BADAMI, Judge, dissenting:

The primary issue to be determined is whether private sodomy between consenting adults in a heterosexual relationship is constitutionally protected by the *right of privacy*. I believe that it is.

Resolution of the issue begins with the landmark case of *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), which dealt with the constitutionality of Connecticut's statutes criminalizing the use of contraceptives by married couples and criminalizing the activities of those who aided and abetted in their use. The Court struck down the Connecticut statute recognizing, for the first time, a constitutionally protected right of privacy. It also set forth what many later cases have termed a "eulogy" of the marital relationships:

> We deal with a right of privacy older than the Bill of Rights—older than our political parties, older than our school system. Marriage is a coming together for better or worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects. Yet it is an association for as noble a purpose as any invoked in our prior decisions.

*Griswold v. Connecticut*, 381 U.S. at 486, 85 S.Ct. at 1682.

Because of this foregoing language, many cases subsequent to *Griswold* assumed that the right to privacy inhered in the marriage relationship alone and was inapplicable to a situation in which the parties were not married. *See Pruett v. State*, Tex.Cr. 463 S.W.2d 191 (1970); *Washington v. Rodriguez*, 82 N.M. 428, 483 P.2d 309 (1971); *Hughes v. State*, 14 Md.App. 497, 287 A.2d 299 (1972); *Dixon v. State*, 256 Ind. 266, 268 N.E.2d 84 (1971).

In *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), the Court extended the right of privacy under *Griswold* far beyond the narrow view taken by *Washington, Pruett, Hughes*, and *Dixon, supra*. In *Eisenstadt* the Court held violative of the equal protection clause a Massachusetts statute that prohibited distribution of contraceptives to unmarried persons but not to married persons. In the course of its opinion the Court stated:

> It is true that in *Griswold* the right of privacy in question inhered in the marital relationship. Yet the marital couple is not an independent entity with a mind and heart of its own, but an association of two individuals each with a separate intellectual and emotional makeup. If the right of privacy means anything, it is the right of the *individual*, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child. *See Stanley v. Georgia*, 394 U.S. 557 [89 S.Ct. 1243, 22 L.Ed.2d 542] (1969).

*Eisenstadt v. Baird*, 405 U.S. at 453, 92 S.Ct. at 1038 (footnote omitted).

This language makes it clear that the right of privacy is a right of all persons, whether married or not. The better reasoned cases after *Eisenstadt* have indicated that convictions of consenting adults for "unnatural" sex acts committed in private violate the right of privacy. In *Lovisi v. Slayton*, 363 F.Supp. 620, 625–26 (E.D.Va. 1973), the court stated in dictum:

> the rationale expressed in *Eisenstadt* extends to protect the manner of sexual relations between unmarried persons. It is not marriage vows which make intimate and highly personal the sexual behavior of human beings. It is instead, the nature of sexuality itself or some-

thing intensely private to the individual that calls forth constitutional protection.

\* \* \* \* \* \*

included among ... protected areas, this Court concludes, are intimate sexual relations between consenting adults, carried out under secluded conditions.

In *United States v. Brewer,* 363 F.Supp. 606, 607–08 (M.D.Pa.1973), *aff'd* 491 F.2d 751 (3rd Cir.1973), the court stated in dictum:

> While there has been no Supreme Court decision on the precise issue of the Constitutional validity of statutes aimed at preventing 'deviant sexual conduct,' the apparent trend of recent decisions would indicate that such a right among or between consenting adults does exist. The broad 'victimless' Pennsylvania sodomy statute invoked in the instant case certainly cannot even claim a purpose as weighty as that of the abortion statutes struck down as unconstitutional, where harm to the fetus was brought into question.

\* \* \* \* \* \*

If the simple question of adult consensual sodomy were invoked, this Court might strike down the statute.

I believe that in view of *Griswold* and *Eisenstadt* and the cases following them, no sound argument can be made that the right of privacy in sexual conduct between consenting heterosexual adults is "fundamen-

tal" only when the consenting adults are married to each other. The right of privacy is deemed fundamental because it is basic to the concept of the individual in our American culture and because it is a necessary prerequisite to the effective enjoyment of all our other fundamental rights. As *Eisenstadt* and its progeny have recognized, these reasons are wholly unrelated to the existence *vel non* of a marriage relationship. I believe that a right of sexual privacy between consenting heterosexual adults is fundamental. In so doing, I do not pass on the constitutionality of the crime of cohabitation. Nor would I extend this holding to the crime of adultery.

Having concluded that the right is fundamental, any regulation limiting the right must be justified by a "compelling state interest." *See Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

The Government argues that acts of oral sex are deviant conduct [1] and therefore subject to regulation by Congress. The State of Arizona in *State v. Bateman,* 113 Ariz. 107, 547 P.2d 6 (1976) held that the state's sodomy statute was constitutional when applied to both married and nonmarried individuals because the state can regulate "sexual misconduct." The majority in *Bateman* and in the case *sub judice* base their label of misconduct upon the Bible and early English law.[2] Although recognizing that in our modern society there are some people who believe such conduct is "deviant," the *Bate-*

---

[1] Article 125, Uniform Code of Military Justice, 10 U.S.C. § 925 (1976) broadly defines sodomy as "unnatural carnal copulation." Paragraph 204, Manual for Courts-Martial, United States, 1969 (Revised edition) explains:

> It is unnatural carnal copulation for a person to take into his or her mouth or anus the sexual organ of another person or of an animal; or to place his or her sexual organ in the mouth or anus of another person or of an animal; or to have carnal copulation in any opening of the body, except the sexual parts, with another person; or to have carnal copulation in any opening of the body of an animal.

For definitions of various terms, *see United States v. Dearman,* 7 M.J. 713 (A.C.M.R.1979).

[2] What is considered immoral, unnatural or deviant sexual conduct may vary by time and

circumstances. This is a matter of some controversy wherein I take no position. It is noted that in his 1953 book, Sexual Behavior in the Human Female, at page 361, Dr. Kinsey found that in the pre-coital techniques of married partners, oral stimulation of the female genitalia by the male occurred in 54 percent of the sampled cases and of the male genitalia by the female in 49 percent of the sampled cases. In their 1967 book, The Freedom of Sexual Love, Joseph and Lois Bird at page 116, state "Oral-genital stimulation in the pre-coital love-making of husband and wife is not immoral. Nor is it unnatural of perverted." They go on to state that there are a number of studies verifying the prevalence of this variety of love-making among married couples. This book indicates that its contents are consistent with the teachings of the Roman Catholic Church.

*man* court and the majority believe history forms a basis for the legislature to validly proscribe such conduct while the judicial branch must stand mute. I do not agree with this reasoning. The Arizona Court found a "rational basis" for the law. That is not enough. There must be a "compelling state interest." I am unable to perceive of any injury or any danger that will accrue to anyone by allowing private consensual sodomy by heterosexual adults. It is not the function of penal law to provide either a medium for the articulation or the apparatus for the intended enforcement of moral or theological values. *See People v. Onofre,* 51 N.Y.2d 476, 434 N.Y.S.2d 947, 415 N.E.2d 936 (1980) (where the court held New York's sodomy law to be unconstitutional).

I believe that Article 125, UCMJ, is unconstitutional when applied to private, consensual sodomy between heterosexual adults. In so doing I am mindful of *United States v. Scoby,* 5 M.J. 160 (C.M.A.1978) wherein Judge Cook states at page 166 that the Article is constitutional even as to consenting heterosexual adults. I note that *Scoby* involved homosexual conduct and therefore do not feel bound by this dictum.

As a general principle of Constitutional Law, I agree with the needs discussed in the concurring opinion. The aggravating facts and circumstances of the case *sub judice* at first blush appear to balance the scale in favor of the needs for a disciplined armed force. However, *Griswold v. Connecticut, supra,* and its progeny set forth a constitutionally protected right which may not be circumvented lightly. I cannot make the jump in logic that the absolute need for a disciplined armed force is as broad a compelling governmental interest so as to proscribe the private sexual acts between consenting adults in a heterosexual relationship. When I look at the balance of these competing rights, the scale is tipped in favor of the individual service member's right of privacy.

Accordingly, I dissent from the majority's holding concerning the constitutional question of Article 125, UCMJ, raised by the appellant. In all other respects, I agree with the majority's disposition of the assignments of error.